v.

**UNITED STATES of America,**
**Appellee.**

**No. 15068.**

United States Court of Appeals
Fifth Circuit.

June 21, 1955.

Victor V. Blackwell, Covington, La., for appellant.

Meredith T. Holt, Asst. U. S. Atty., T. Fitzhugh Wilson, U. S. Atty., Shreveport, La., William R. Veal, Asst. U. S. Atty., Shreveport, La., for appellee.

Before HOLMES and BORAH, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

Appellant, a member of the Jehovah's Witnesses, was convicted of refusing to submit to induction into the armed forces in violation of the Universal Military Training and Service Act, as amended, 50 U.S.C.A.Appendix, § 462. The questions raised upon this appeal are whether the denial by the designated agencies of appellant's claim for exemption as a conscientious objector and as a regular or duly ordained minister of religion was without basis in fact and whether the

use of the FBI investigative report against him in the course of the administrative process and the Court's refusal to order it produced at the trial were improper and deprive him of substantive and precedural due process.

The facts on which the draft boards acted are these: On July 31, 1950, appellant filed his classification questionnaire with the local Board stating that he was 19 years of age and a full time high school student majoring in agriculture, having completed 8 years of elementary school and 2 years of junior high school. He did not sign the statement in that part (series XIV) of the questionnaire reserved for a registrant who claims to be a conscientious objector, and he did not fill out the blank spaces in series VI that were to be filled out by a minister or a student preparing for the ministry. However, he did state that he should be placed in a deferred class.

Ten days later appellant was classified 1–A. Four days thereafter he wrote the local Board asking for a deferment from the 1–A classification in order that he could attend "another 9 mo. term, at least, of school." For, as appellant explained: "I would like to get as much schooling as possible before going to Army." On March 26, 1951, in response to a notice from the Board he reported for his physical examination and was accepted. Within two weeks thereafter he asked for, received and filed with the Board, the special form for conscientious objectors, SSS Form No. 150, claiming exemption from combatant and noncombatant service. The pertinent parts of this form as filled out by appellant are set out below.[1] As persons who could supply information as to

1. In answer to the following questions in the special form he wrote:

"3. Explain how, when, and from whom or from what source you received the training and acquired the belief which is the basis of your claim made in Series I above?

"I read the Bible and the Bible helps supply by the Watchtower Bible and Tract Society. I have been reading this for 3 years.

"4. Give the name and present address of the individual upon whom you rely most for religious guidance?

"I depend upon no particular human individual but receive my religious guidance from the Bible and the Spirit of God.

"5. Under what circumstances, if any, do you believe in the use of force?

"None.

"6. Describe the actions and behavior in your life which in your opinion most conspicuously demonstrate the consistency and depth of your religious convictions.

"I have been baptized and consecrated my life to the Lord. I attend Bible Meetings regularly and preach the message of the Kingdom from door to door. Acts 20:20.

"7. Have you ever given public expression, written or oral, to the views herein expressed as the basis for your claim made in Series I above? If so, specify when and where.

"My views have been expressed from door to door and this at least several times each month whenever I have an opportunity."

*     *     *     *     *

"2. Are you a member of a religious sect or organization?

"Yes.

"If your answer to question 2 is 'yes', answer questions (a) through (e).

"(a) State the name of the sect, and the name and location of its governing body or head if known to you.

"Jehovah Witness, Watchtower Bible & Tract Society, Inc. 117 Adams St., Brooklyn, New York.

"(b) When, where, and how did you become a member of said sect or organization?

"In 1948 I began studying the Bible and Bible helps supplies by the Watchtower Society and attending Bible Meetings.

"(c) State the name and location of the church, congregation, or meeting where you customarily attend.

"Compti Company of Jehovah Witness, 1429 Hill Avenue, Natchitoches, Louisiana.

"(d) Give the name, title, and present address of the pastor or leader of such church, congregation, or meetings.

"Mr. Emmet L. Stone, Company Servant, Box 204—Compti, Louisiana.

"(e) Describe carefully the creed or official statements of said religious sect or organization in relation to participation in war.

"See attached sheet. *  *  *  *  *"

the sincerity of his professed convictions against participation in war he gave the names of four persons. The local Board reviewed the file a few days later and then sent it to the State Appeal Board for decision. The latter in turn reviewed the file and determined that appellant should not be classified in either Class 1–A–O or Class IV E and transferred the file to the U. S. Attorney with the request that he secure an advisory recommendation from the Department of Justice.

On July 16, 1951, after notice to appellant, a hearing was held before a duly appointed hearing officer at which hearing appellant appeared together with the four persons named by him in his SSS Form No. 150. The hearing officer's report showed that he interviewed appellant and his witnesses, considered a detailed report by the FBI and recommended approval of the decision of the local Board and the Appeal Board denying the exemption.

Seven months later, one Wendell Phillips, describing himself as an ordained minister of the Gospel and a travelling overseer of churches representing the Watchtower Bible and Tract Society, Inc., of Brooklyn, New York, wrote a letter to the local Board in which he asked that appellant be re-classified from 1–A to IV D so that appellant might continue to render public service in his capacity of minister of the Gospel. In the letter he stated that appellant had completed the prescribed course of study and was appointed on January 1, 1952, to the status of fulltime Pioneer Minister of the Gospel, the writer having personally officiated at his ordination to the ministry on April 1, 1951. This letter was transmitted by the local Board to the State Director of Selective Service in the expectation that the file would be returned there by the United States Attorney upon the completion of his investigation.

On June 4, 1952, the Department of Justice forwarded the Cover Sheet, together with the hearing officer's report, to the Appeal Board with the recommendation that appellant be not classified as a conscientious objector on the ground that he had failed to establish that his alleged objections were based upon deep-seated conscientious convictions arising out of religious training and belief.

Twelve days later, the Appeal Board classified appellant 1–A. On July 10, 1952, the Acting State Director of Selective Service mailed the Cover Sheet of appellant, together with the letter of Phillips, to the Appeal Board with the request that it reconsider appellant's classification in view of the additional information submitted. Attached to the forwarding letter however, was a memorandum dated the same date from the "Legal Advisor" suggesting that since their request for reconsideration of appellant's classification had not been acted upon by the local Board, the entire matter should be returned to the local Board, and that after they had an opportunity to consider the Phillips letter the proper notation should be entered on the questionnaire and the file should then be returned to the Appeal Board for its consideration. The file was forwarded to the local Board by letter of July 11, 1952. The local Board then sent a letter to appellant suggesting that he furnish additional information pertaining to his request for exemption because of his ministerial status, and a questionnaire was also sent to the Winnfield High School. The questions propounded to appellant and his answers appear in the margin.[2]

2. The questions and answers are as follows:
"Have you graduated from high school? No.
"If not give the highest grade completed and last date attended. 11th Grade completed, May 27, 1951.
"Give dates you attended divinity school. Since Nov. 1, 1950. (Still attending night school).

"Are you a regular, full-time minister? Yes.
"If so, name and location of church where you are a full-time minister. Appointed to organize churches. (See attached.)
"Do you have any other vocation or part-time job? No.
"If so, give name and where employed. .............."

The appellant attached to that form a certificate from one T. J. Sullivan, Superintendent of Ministers and Evangelists of the Watchtower Bible and Tract Society Incorporated. This certificate is set out in part in the margin.[3] The information form which was returned by the high school showed that appellant had not entered for the 1951–1952 term. The local Board reviewed but did not reopen appellant's file and denied his request for reclassification as IV-D. The local Board then returned the file to the Appeal Board with the comment "The Jehovah Witnesses have a number of their representatives on the streets handing out literature. In our opinion he is not a preacher at all, but a 'Draft Dodger' and we think he should be in the army." The Appeal Board on reconsideration, classified appellant 1–A. Thereafter appellant appealed to the Presidential Appeal Board and that Board on December 3, 1952, retained him in 1–A. Thereafter, he refused to submit to induction and this prosecution followed.

The paramount issue before us is whether there was a basis in fact for denying appellant's claim to a ministerial exemption under § 6(g) of the Universal Military Training and Service Act, 62 Stat. 611, 50 U.S.C.A.Appendix, § 456 (g).

Section 6(g) provides, in pertinent part, that "Regular or duly ordained ministers of religion, as defined in this title, * * * shall be exempt from training and service (but not from registration) under this title."

The ministerial exemption is a narrow one and as the Supreme Court pertinently said in Dickinson v. United States, 346 U.S. 389, 395, 74 S.Ct. 152, 156, 98 L.Ed. 132: "Each registrant must satisfy the Act's rigid criteria for the exemption. Preaching and teaching the principles of one's sect, if performed part-time or half-time, occasionally or irregularly, are insufficient to bring a registrant under § 6(g). These activities must be regularly performed. They must, as the statute reads, comprise the registrant's 'vocation.' And since the ministerial exemption is a matter of legislative grace, the selective service registrant bears the burden of clearly establishing a right to the exemption."

We think appellant made out his *prima facie* case by objective facts. He was ordained in accordance with the principles prescribed by his sect, and, he was regularly engaged, as a vocation in preaching and teaching the principles of his sect and conducting public worship in the tradition of his religion. Here, as in Dickinson, the objective facts on which appellant based his claim as a full-time minister, were undisputed, and they placed him squarely within the terms of the Act.[4] Under these circumstances "it

---

3. The complete text of the certificate is as follows: "This is to certify that A. D. Rowell is a duly ordained minister of Jehovah Witnesses, engaged, as his customary vocation, in preaching and teaching the principles of this Society and administering the rites and ceremonies thereof in public worship.

"He has been duly ordained in accordance with the principles prescribed by the Society. This was by a public ceremonial on April 1, 1951, whereby he confessed in the presence of witnesses that his life was thereafter dedicated to service of Almighty God Jehovah as a minister and to follow in the footsteps of Christ Jesus preaching His Kingdom of righteousness. Since such date he has been recognized by this Society as qualified to represent it in such capacity.

"He was duly appointed on January 1, 1952 as a 'pioneer' minister and acts as a direct representative of this organization and has since been organizing and establishing churches and generally preaching the doctrine and principles of Jehovah's Witnesses in a territory assigned to him. He is authorized to perform the ordinary rites and ceremonies recognized and employed by Jehovah's witnesses, such as the baptismal ceremony, and burial ceremony, etc.

"He is therefore declared and certified by this Society to be, in accordance with its principles, a duly ordained minister, having the qualifications to preach the gospel of God's kingdom." (Isaiah 61:1, 2; Matthew 24:14.)

4. See Section 16(g) for the statutory definition of a "regular or duly ordained minister of religion."

was not for the Board to say whether he was motivated by sincere religious principles in becoming a minister, or whether his convictions were deep, but merely, as the Act provides, whether he was a 'regular or duly ordained minister of religion' as therein defined." Witimer v. United States, 348 U.S. 375, 75 S.Ct. 392, 395. We therefore hold as in Dickinson, that the local Board decision was without basis in fact, there being no evidence "incompatible with the registrant's proof of exemption" to rebut his *prima facie* case. Holding as we do that the local Board had wrongfully denied the registrant a minister classification it is unnecessary for us to pass on appellant's further contentions.

The judgment of the District Court is reversed with instructions that an order be entered acquitting the appellant.