JAMES S. WINGO AND REGINA L. WINGO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8613-85.          Filed October 27, 1987.

*Wilson L. Waller,* for the petitioner.
*Kirk S. Chaberski,* for the respondent.

PARKER, *Judge*: Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1981

and 1982 in the amounts of $917.35 and $651.41, respectively.

The issue is whether a probationary member of an annual conference of the United Methodist Church, who is also an ordained deacon and a licensed local pastor of a church of that denomination, is "a duly ordained, commissioned, or licensed minister" for purposes of the self-employment tax exemption under sections 1402(c) and 1402(e).[1]

## FINDINGS OF FACT

This case was submitted fully stipulated under Rule 122. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference.[2]

Petitioners James S. Wingo and Regina L. Wingo resided in Crawfordsville, Arkansas, at the time they filed their petition in this case. Petitioners timely filed their joint 1981 and 1982 Federal income tax returns (Forms 1040) with the Internal Revenue Service Center in Austin, Texas. Petitioner Regina L. Wingo is a party in this case solely because she filed a joint tax return with her husband for the years in issue. All references to petitioner henceforth are to James S. Wingo.

During the fall of 1979, petitioner entered his candidacy for ordination as an elder and member in full connection (also referred to as "full member") with the North Arkansas Annual Conference of the United Methodist Church. The United Methodist Church is governed and maintained through its chain of conferences. These conferences include

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable years in question, and all "Rule" references are to the Tax Court Rules of Practice and Procedure.

[2]Many of the findings of fact in this case and many of the arguments of both parties are based upon The Book of Discipline of the United Methodist Church (1980 ed.), which the parties stipulated into evidence. This 653-page book explains the organization and hierarchy of the United Methodist Church, as well as its religious tenets and practices. The parties further stipulated that petitioner was subject to and, in fact, followed the guidelines and procedures set out in the 1980 edition of The Book of Discipline. Neither petitioner nor anyone else in this case purported to speak officially for the United Methodist Church. We note that par. 610 of The Book of Discipline provides that no person has the authority to speak officially for the United Methodist Church, "this right having been reserved exclusively to the General Conference under the Constitution" and limits what an individual member may do even when "called to testify before a legislative body to represent the United Methodist Church." Accordingly, we are aware that petitioner's arguments are not necessarily the position of the United Methodist Church. We are also aware that we must decide this case without the benefit of any official position of the United Methodist Church other than what we can glean from our careful consideration of The Book of Discipline.

the general conference for the entire church worldwide, the jurisdictional conferences for the church which are regional or geographical divisions in the United States, the central conferences and their constituent conferences for the church outside the United States, the annual conferences for the church in different local regions of the United States, the local district conferences, and the charge conferences for each local church or charge.

The North Arkansas Annual Conference of the United Methodist Church (hereinafter referred to as the annual conference) is the basic governing body of the United Methodist Church for the northern portion of Arkansas. The annual conference is composed of ministerial members as defined by the general conference and lay members elected by each charge or individual church. The ministerial membership of the annual conference is made up of members in full connection, probationary members, associate members, and local pastors under a full-time appointment to a pastoral charge. The annual conference prepares annual journals which contain detailed minutes and records of all actions taken by that particular annual conference. The annual journals for 1980 through 1984 each list petitioner among the ministerial members, and reflect the various actions taken in regard to him.

In June of 1980, petitioner was approved as a probationary member of the annual conference. In the United Methodist Church, candidates for membership in full connection in the annual conference must go through a probationary period of at least two years. However, there is no requirement that ministerial members of the annual conference become members in full connection (full members), and some may and do remain as associate members for many years.[3] Probationary members, like associate

---

[3]In the United Methodist Church, all ministers, whether full members, probationary members, associate members, or local pastors are amenable to the review and discipline of the annual conference in the performance of their duties in the positions to which they are appointed. Associate members are granted the same security of appointment as probationary members and members in full connection. Associate members are eligible for ordination as deacons but may not be ordained as elders unless they qualify through probationary membership for membership in full connection in the annual conference. Local pastors may become probationary members leading to full connection or may qualify for associate membership, choosing to remain in local relationship rather than in full connection. The annual journals list associate members who have served for 24 or 25 years. The record does not

members, are eligible for ordination as deacons but may not be ordained as elders until they qualify for membership in full connection in the annual conference. A candidate for full membership can only remain on probation for eight regular conference sessions following his or her admission to probationary membership.

The ordained ministry of the United Methodist Church consists of elders and deacons. An elder is a minister in full connection with the annual conference who has authority for the ministry of Word, Sacrament, and Order in the Methodist Church, and who has been ordained as an elder. The elders are the leaders of the church who are authorized to preach and teach the Word of God, administer the Sacraments of Baptism and the Lord's Supper, equip the laity for ministry, exercise pastoral oversight, and administer the discipline of the Church. Deacons are ministers who have progressed sufficiently in their preparation for the ministry to be received by an annual conference as either probationary members or associate members and who have been ordained as deacons. Deacons have authority to conduct divine worship, to preach the Word, to perform the marriage ceremony where the laws of the State permit, and to bury the dead. When invited by an elder, they may assist in the administration of the sacraments. When serving as regularly appointed pastors of a local church or charge, deacons are granted authority to administer the sacraments at the church to which appointed and to provide for the organizational concerns of that church, including administering the discipline and supervising the working program of the local church.

The probationary members are on probation as to their character, preaching, and effectiveness as pastors. As a ministerial member of the annual conference, the probationary member and the associate member have the right to vote on all matters except (1) constitutional amendments, (2) election of delegates to the general, jurisdictional, or central conferences, and (3) all matters relating to the ordination, character, and conference relations of ministers. In addition, probationary members and associate members

indicate that these associate members had ever become or need ever become full members in connection in this or any other annual conference of the United Methodist Church.

may serve on any board, commission, or committee of the annual conference except the board of ordained ministry. The boards that they can serve on include the Board of diaconal ministry (service ministries separate and apart from the ordained ministry), the council on finance and administration, and the council on ministries.

In addition to being approved as a probationary member of the annual conference, on June 4, 1980, petitioner was licensed as a local pastor and ordained as a deacon by the United Methodist Church. At that time petitioner was appointed to serve as the local pastor of the Bono-Shady Grove Charge, a local church or churches in the Jonesboro district of Arkansas. As a local pastor in the United Methodist Church, petitioner was authorized to, and in fact did, administer the sacraments of baptism and the Lord's Supper as well as conduct divine worship, preach the Word, and perform the services of marriage, burial, confirmation, and membership reception. In addition, as a pastor, petitioner was held responsible for ministering to the needs of the whole community as well as to the needs of the people of the church, which included instructing candidates for membership and receiving them into the church, counseling troubled or bereaved families, seeking out church members for pastoral ministry or other church-related occupation, and advising and assisting church members who commit themselves thereto. Finally, the pastor must see that the organizational concerns of the congregation are provided for, which includes administering the provisions of the discipline, supervising the working program of the church, presiding over the charge conference if asked to do so by the district superintendent, and maintaining church records and meeting local financial obligations.

A local pastor in the United Methodist Church has a period of 8 years to complete his educational requirements but may be granted unlimited annual extensions upon a three-fourths vote of the district committee on ordained ministry, recommendation by the conference board of ordained ministry, and the vote of the ministerial members in full connection. The record is silent as to the nature of petitioner's formal theological training and exactly when he completed it. However, the annual journals of the North

Arkansas Annual Conference for 1982 and 1983 listed petitioner as a graduate of an approved school of theology serving under a full-time appointment as a local pastor.

As an ordained deacon in the United Methodist Church, petitioner had authority to conduct divine worship, preach the Word, perform marriage ceremonies, and bury the dead. In addition, when ordained deacons also serve as regularly appointed local pastors, they are permitted to administer the sacraments, and provide for the organizational concerns of the local church, all of which petitioner did. As noted above, the United Methodist Church considers both deacons and elders as the ordained ministry of the church.

Petitioner served as a regularly appointed full-time pastor and ordained deacon for the Bono-Shady Grove Charge until June of 1984. In June of 1984, petitioner was received as a member in full connection with the annual conference and was ordained as an elder.

During the 1981 taxable year, petitioner received income in the amount of $9,864 from the Bono-Shady Grove Charge for his work as a pastor and ordained deacon. In 1982, petitioner earned $6,967 from the Bono-Shady Grove Charge for his work as a pastor and ordained deacon. Petitioner did not report any self-employment tax due on either his 1981 or 1982 joint Federal income tax returns. During the entire time in question, the Bono-Shady Grove Charge, a nonprofit religious organization under section 501(c)(3), had not elected to be subject to the Federal Insurance Contributions Act.

On April 3, 1984, respondent received a Form 4361, Application for Exemption from Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners, from petitioner. On this first Form 4361, petitioner specified that he had been commissioned or licensed as a minister on June 4, 1980, and that 1980 and 1981 were the first 2 years after his commissioning or licensing in which he had net self-employment earnings of $400 or more, any of which was derived from services as a minister. On May 1, 1984, respondent notified petitioner that his Form 4361 had been disapproved as untimely. On March 18, 1985, respondent received a second Form 4361 from petitioner. On this second Form 4361,

petitioner specified that he had been ordained as a minister on June 7, 1984, and that 1985 and 1986 were the first 2 years after his ordination that he had self-employment earnings of $400 or more, any of which was derived from services as a minister. Respondent notified petitioner that this second Form 4361 was also disapproved.

By statutory notice of deficiency dated January 9, 1985, respondent determined that petitioner owed self-employment tax in the amount of $917.35 for the 1981 taxable year. This deficiency was based on the payments made to petitioner by the Bono-Shady Grove Charge in 1981 since petitioner did not have a valid exemption form on file under section 1402(e). By statutory notice of deficiency dated January 16, 1985, respondent determined that petitioner owed self-employment tax in the amount of $651.41 for the 1982 taxable year. This deficiency was based on the payments made to petitioner by the Bono-Shady Grove Charge in 1982 since petitioner did not have a valid exemption form on file under section 1402(e).

## OPINION

The posture of this case is somewhat unusual. Normally, the taxpayer contends that he is a minister so that he can apply for the exemption from self-employment tax available to ministers under section 1402 or so that he can obtain the benefit of the parsonage exclusion available to ministers under section 107. Here, petitioner says he was not a minister in 1981 and 1982. His first application for the minister's self-employment tax exemption was untimely for those years. However, because of the particular facts and law pertaining to his local church those 2 years, he can avoid the self-employment tax if he was an employee of the Bono-Shady Grove Charge.

Petitioner argues that he was an employee of the local church in 1981 and 1982, rather than a minister. If petitioner was an employee rather than a minister, he is exempt from paying self-employment taxes on his earnings during those years. In 1981 and 1982, an employee of a religious organization under section 501(c)(3) that had not elected to be subject to the Federal Insurance Contributions Act, such as the Bono-Shady Grove Charge, was not

required to pay any self-employment taxes. Sec. 1402(c)(2).[4] If petitioner was a minister, he is liable for self-employment taxes since he did not file a timely Form 4361 in accordance with section 1402(e). Accordingly, we must decide whether petitioner was "a duly ordained, commissioned or licensed minister" within the meaning of section 1402(c)(4)[5] during the taxable years 1981 and 1982.

Section 1401 imposes a tax upon an individual's self-employment income. Section 1402(b) defines self-employment income as the "net earnings from self-employment" derived by an individual during a taxable year. Section 1402(a) defines net earnings from self-employment as an individual's gross income from a trade or business carried on by such individual, less the deductions attributable to that trade or business. Section 1402(c)(4), however, stipulates that the term "trade or business" does not include "the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" if a proper exemption under section 1402(e) is effective. See note 5 *supra.*

Prior to 1968, a minister was excluded from social security coverage and exempt from the self-employment tax, unless he filed an application to be covered and made subject to the tax. The law, however, was changed by the Social Security Amendments of 1967, Pub. L. 90-248, 81 Stat. 821, 839. Now, a minister is subject to the self-employment tax unless he files an application for exemption

---

[4]See Rev. Proc. 67-43, 1967-2 C.B. 684. In 1983, however, Congress enacted sec. 1402(c)(2)(G) which provides that, for self-employment tax purposes, service by an employee described in sec. 3121(b)(8)(B) is considered service in a trade or business and subject to self-employment taxes. See Pub. L. 98-369, sec. 2603(c)(2), 98 Stat. 1129. Sec. 3121(b)(8)(B) describes service performed by the employee of a religious, charitable, educational, or other organization described in sec. 501(c)(3).

[5]Sec. 1402(c)(4) states as follows:

(c) TRADE OR BUSINESS.—The term "trade or business", when used with reference to self-employment income or net earnings from self-employment, shall have the same meaning as when used in section 162 (relating to trade or business expenses), except that such term shall not include—

\* \* \* \* \* \* \*

(4) the performance of service by a duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry or by a member of a religious order in the exercise of duties required by such order;

\* \* \* \* \* \* \*

The provisions of paragraph (4) \* \* \* shall not apply to service \* \* \* performed by an individual unless an exemption under subsection (e) is effective with respect to him.

within the prescribed time limit. Sec. 1402(e). A duly ordained, commissioned, or licensed minister of a church must file the application before the later of (1) the due date of the return for the second taxable year for which the minister has net earnings of $400 or more, any part of which was derived from the performance of services in his ministry, or (2) the due date of the return for his second taxable year ending after 1967. Sec. 1402(e)(2). These time limitations imposed by section 1402(e)(2) (now (e)(3)) are mandatory and taxpayers must strictly comply with them. Sec. 1.1402(e)(2)-1, Income Tax Regs.; *Ballinger v. Commissioner*, 728 F.2d 1287, 1289 (10th Cir. 1984), affg. 78 T.C. 752 (1982); *Olsen v. Commissioner*, 709 F.2d 278, 280 (4th Cir. 1983), affg. a Memorandum Opinion of this Court.

To obtain this exemption, a minister must be duly ordained, commissioned, or licensed. Sec. 1402(c)(4). Although neither section 1402 nor the accompanying regulations define the term "duly ordained, commissioned, or licensed minister,"[6] one case has discussed the issue under section 1402(c). In *Ballinger v. Commissioner, supra,* a Baptist minister applied for an exemption under section 1402(e) after he was ordained at one church, transferred to another church, and some 5 years after the transfer was again ordained at the second church. The exemption form was filed too late for the first, but not the second ordination. In determining at what point the minister was "duly ordained, commissioned, or licensed," the 10th Circuit concluded that this determination did not depend on the

---

[6]Petitioner argues that the Court should follow the definition of a minister set forth in the Social Security Handbook. The Handbook states:

"A minister is 'ordained, commissioned, or licensed' if he or she has been invested with ministerial status in accordance with the procedure followed by the particular church denomination; however, he or she does not have to be connected with a congregation. Ministerial authority continues until revoked by the church.

"Where a church or church denomination has an ordination procedure, the commissioning or licensing of an individual as a minister of the church does not give him or her the status of a commissioned or licensed minister for Social Security purposes unless such commissioning or licensing establishes a status that is the equivalent of ordination and is so recognized by the church."

[U.S. Department of Health and Human Services, Pub. No. 05-10135, Social Security Handbook 1984, 133-134 (July 1984).]

The Social Security Handbook states that it was prepared solely for convenient reference and "does not have the effect of law or regulations" and so it cannot be relied on as the governing law. See U.S. Department of Health and Human Services, *supra* at iii. In addition, petitioner was ordained as a deacon in the United Methodist Church and was accorded the status of an ordained deacon by the denomination; thus, petitioner comes within the definition of a minister in the Social Security Handbook.

timing or even the fact of ordination vel non. Rather, the determination of when the taxpayer became a minister depended on when he assumed the duties and functions of a minister. *Ballinger v. Commissioner, supra,* 728 F.2d at 1289-1290. In other words, "the triggering event [for applying for the exemption] is the assumption of the duties and functions of a minister." 728 F.2d at 1290. The 10th Circuit did not discuss what constituted the duties and functions of a minister since in that case the stipulations specified that the taxpayer had assumed those duties and functions.

Although the *Ballinger* opinion did not discuss the functions and duties of a minister, the regulations promulgated under section 1402 describe three types of services that a minister in the exercise of his ministry performs. These services are: (1) The ministration of sacerdotal functions, (2) the conduct of religious worship, and (3) service in the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination. Sec. 1.1402(c)-5(b)(2), Income Tax Regs.[7]

Although we have found no case in which this or any other court has discussed the duties and functions of a minister under section 1402(c), we have discussed those

---

[7]Sec. 1.1402(c)-5(b)(2), Income Tax Regs., provides that:

(b) *Service by a minister in the exercise of his ministry.* * * *

\* \* \* \* \* \* \*

(2) Except as provided in paragraph (c)(3) of this section, service performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination. The following rules are applicable in determining whether services performed by a minister are performed in the exercise of his ministry:

(i) Whether service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of the particular religious body constituting his church or church denomination.

(ii) Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. The term "religious organization" has the same meaning and application as is given to the term for income tax purposes.

duties and functions under section 107.[8] In these cases, we have relied upon the three types of ministerial services under section 1.1402(c)-5(b)(2), Income Tax Regs., to determine the issue of whether the taxpayer was a minister for purposes of section 107. *Lawrence v. Commissioner*, 50 T.C. 494, 497 (1968); *Salkov v. Commissioner*, 46 T.C. 190, 195 (1966).

Section 107 excludes from gross income the rental value or parsonage allowance paid to a "minister of the gospel" as compensation for services he performs in the exercise of his ministry. To determine whether a person qualifies for this exemption, we must first decide whether the person claiming the exemption is a minister. The regulations under section 107 specify that the rules in section 1.1402(c)-5, Income Tax Regs., apply in making this determination. See sec. 1.107-1(a), Income Tax Regs. We have inquired whether a person has performed the three types of services to determine whether the person claiming the exclusion under section 107 is a minister.

In *Salkov v. Commissioner, supra*, we relied upon the three types of ministerial services in section 1.1402(c)-5, Income Tax Regs., to determine whether Salkov was a minister for purposes of the exclusion under section 107. Salkov was a cantor who, in accordance with the Jewish faith, was never formally ordained. In applying the three types of services, we found that the taxpayer fulfilled the first prong, ministration of sacerdotal functions, since he officiated at weddings, funerals, and houses of mourning, which are all recognized as sacerdotal functions in the Jewish faith. 46 T.C. at 195. The taxpayer satisfied the second prong, the conduct of religious worship, since he and the rabbi jointly conducted weekly religious ceremonies and festivals, and high holidays. 46 T.C. at 195-196. Finally, the taxpayer satisfied the third prong, performing services in the control, conduct, and maintenance of organizations within the congregation, with his training of the young men

---

[8]Sec. 107 states as follows:

SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

of the congregation, his direction of the congregation's musical program, and his supervision of the youth chorus. 46 T.C. at 196. The fact that the taxpayer could not judge, interpret, or authoritatively teach Jewish law, as the rabbi could, made no difference since he otherwise performed the three types of services. 46 T.C. at 196.

In addition, in *Salkov* we found that the phrase "duly ordained, commissioned, or licensed" is a disjunctive phrase in that the person may be either ordained, or commissioned, or licensed to be a minister, but need not be all three. 46 T.C. at 197. We further found that the fact that the cantor, unlike the rabbi, was not ordained in the Jewish faith was *not important* since the statute specifies that a minister may be either ordained, commissioned, or licensed. 46 T.C. at 197. The congregation's formal selection of the taxpayer as their cantor constituted commissioning him as their minister. 46 T.C. at 197.

In addition to examining the cantor's functions and duties with respect to the three types of services as a minister, in *Salkov* we also discussed whether the congregation, itself, considered the cantor to be a religious leader or minister. The Court found that the cantor is regarded as a spiritual official and leader in the Jewish faith. 46 T.C. at 197-198. See also *Silverman v. Commissioner,* an unreported case (8th Cir. 1973, 32 AFTR2d 73-5379, 73-2 USTC par. 9546), affg. 57 T.C. 727 (1972). In *Salkov* we found that the congregation's perception of the cantor as a minister or religious leader was a further persuasive factor in finding that the taxpayer was a minister for Federal tax purposes. 46 T.C. at 197-198.

After *Salkov*, we applied the three types of services of section 1.1402(c)-5, Income Tax Regs., in two other cases to determine whether a person was a minister under section 107. In *Lawrence v. Commissioner,* 50 T.C. 494 (1968), the facts showed that the taxpayer did not qualify as a minister for purposes of section 107 since he neither administered the ordinances of baptism or the Lord's Supper, nor assisted the regular pastor with these ordinances. 50 T.C. at 499-500. The result, however, turned primarily on the taxpayer's failure to carry his burden of proof to establish that he was a "minister of the gospel." In *Silverman v.*

*Commissioner,* 57 T.C. 727 (1972), we distinguished *Lawrence* on its facts and followed *Salkov.* The Eighth Circuit affirmed in an unreported opinion, holding that a cantor who participates with the rabbi in conducting religious services, weddings, and funerals and who prepares Jewish children for their Bar Mitzvahs or Bas Mitzvahs is a duly ordained, commissioned, or licensed minister under section 107. 32 AFTR2d at 73-5381, 73-2 USTC par. 9546 at p. 81,745.

In determining whether petitioner is a minister, we must look at whether he performed the duties and functions of a minister within the three types of services set out in the regulations. In making that determination, we will also consider the additional factors as to whether he was ordained, or commissioned, or licensed, and whether the United Methodist Church considered him to be a religious leader. As to the three types of services set forth in the regulations under section 1402, petitioner satisfies all three elements. The parties do not disagree that petitioner satisfies the first two prongs. First, as a local pastor and an ordained deacon, petitioner administered the sacraments. Petitioner was authorized to and did perform the sacraments of Baptism and the Lord's Supper. He was authorized to, and did, perform the services of marriages, confirmations, and burials. Petitioner satisfied the second prong, conducting religious worship, when he served as the local pastor who was in charge of the Bono-Shady Grove Charge.

The final element of the three types of services is that the minister perform services in control, conduct, and maintenance of the church or religious organizations within the church or church denomination. Sec. 1.1402(c)-5(b)(2), Income Tax Regs. The parties disagree as to whether petitioner meets this third element. Petitioner vigorously denies that he had anything to do with the control, conduct, and maintenance of the church since he was only a probationary member and not a member in full connection with the North Arkansas Annual Conference of The United Methodist Church, the basic governing body for his area of Arkansas.

Petitioner misses the point when he argues that he is not a minister because he could not perform all of the duties of full members of the annual conference. In *Salkov* and

*Silverman,* both of the taxpayers were cantors who could do most, but not all, of the duties assigned to the rabbi in the Jewish faith. In those cases, this Court and the Eighth Circuit based their findings as to the third prong of the three types of services on whether the cantors had any type of control over members or organizations within an individual parish, church, or congregation. *Silverman v. Commissioner,* an unreported case (8th Cir. 1973, 32 AFTR2d 73-5379, 73-5380-5381, 73-2 USTC par. 9546), affg. 57 T.C. 727 (1972); *Salkov v. Commissioner,* 46 T.C. at 196. Thus, the *Salkov* and *Silverman* cases held that preparing children for their Bar Mitzvahs or conducting the youth chorus was sufficient service to fulfill the third prong. *Silverman v. Commissioner, supra; Salkov v. Commissioner, supra.* Those cases, however, did note that since the Jewish faith has no central ecclesiastical organization, the rabbi and cantor exercise the only authority available in the Jewish faith. *Silverman v. Commissioner, supra; Salkov v. Commissioner,* 46 T.C. at 196. Thus, any authority the rabbi and cantor have over their congregation would be considered control over or maintenance of the Jewish faith.

The United Methodist Church, on the other hand, is made up of numerous separate governing conferences. While petitioner was not considered a leader of the United Methodist Church as a whole, as an ordained deacon and as the local pastor presiding over the Bono-Shady Grove Charge, petitioner had a great deal of control over his local charge. Petitioner was in charge of all the organizational concerns of his own congregation, including administering the provisions of the discipline, supervising the working program of the local church, maintaining church records, and meeting local financial obligations. We find that a minister can conduct, control, and maintain the church or church organizations if he is in charge or control of a single congregation, even if the congregation is not the only or highest governing body of the church. Petitioner's duties and responsibilities as pastor were alone sufficient to constitute a minister for purposes of section 1402(c).

Even if petitioner had not exercised any acts of control, conduct, or maintenance of his congregation while acting as a pastor, petitioner would still have met the third prong in

his role as a probationary member of the annual conference. As a probationary member, petitioner could, and in fact did, vote at his annual conference, the governing body for the United Methodist Church in the northern portion of Arkansas. Petitioner had the right to vote on any matter that a member in full connection could vote on except matters concerning (1) the ordination, character, and conference relations of ministers, (2) the election of delegates to the general, jurisdictional, or central conferences, and (3) constitutional amendments. In addition, petitioner was permitted to serve on any boards or commissions at his annual conference, except the board of ordained ministry. As a voting member of the annual conference petitioner had the opportunity to influence the conduct, control, and maintenance of the governing body of the church in his area of Arkansas. The fact that he was not permitted to do all that a member in full connection with the annual conference could do does not mean that he performed no services in the control, conduct, and maintenance of his church or his denomination. To perform services in the control, conduct, and maintenance of the church or organizations within the church, the minister need only have some participation in the conduct, control, and maintenance of the local church or the denomination.

In applying the three types of services, the courts also consider whether the particular church or denomination recognizes the person as a minister or religious leader. See *Silverman v. Commissioner,* an unreported case (8th Cir. 1973, 32 AFTR2d 73-5379, 73-5382, 73-2 USTC par. 9546), affg. 57 T.C. 727 (1972); *Salkov v. Commissioner,* 46 T.C. at 197-198. In this case, the United Methodist Church regarded petitioner as a member of the ministry. The ordained ministry of the United Methodist Church consists of deacons and elders. The ministerial members of petitioner's annual conference included members in full connection (full members), associate members, probationary members, and local pastors. As an ordained deacon, a local pastor, and a probationary member of the annual conference, petitioner was included as a ministerial member of the governing body of his church, the North Arkansas Annual Conference. While the church's designation of a person as a minister,

standing alone, is insufficient to determine whether he is a minister for self-employment tax purposes, it is an additional factor to be considered. When the person performs all three types of services set forth in the regulations, and is recognized as a minister or religious leader by his denomination, as here, that person is a minister for purposes of section 1402(c).

Finally, petitioner's argument comes down to his contention that because he was not a member in full connection with his annual conference and not ordained as an elder, he could not be a minister of the United Methodist Church.[9] The phrase "ordained, commissioned, or licensed" is a disjunctive phrase such that a minister need only be ordained or commissioned or licensed to be a minister. *Salkov v. Commissioner*, 46 T.C. at 197. The regulations and case law do not distinguish between one ordination and another or between ordination and licensing. *Ballinger v. Commissioner*, 728 F.2d 1287 (10th Cir. 1984). Petitioner is a minister for purposes of section 1402(c) because he was licensed as a pastor and ordained as a deacon, and more importantly, because he assumed and performed all of the duties and functions of a minister.

Petitioner, nonetheless, argues that *Salkov v. Commissioner, supra,* and *Silverman v. Commissioner,* can be distinguished from his case by the fact that prior to attaining the position of cantor in the Jewish faith, one must receive specialized training, while petitioner received no specialized training before becoming a local pastor, ordained deacon, and probationary member of the annual conference. The facts as to petitioner's theological education are not clear. In *Salkov* and *Silverman,* however, the courts only mentioned this training to indicate that the cantors were not just self-appointed ministers, since cantors receive

---

[9]In essence, petitioner would exclude from the definition of minister all probationary members, associate members, and local pastors who are ministerial members of his annual conference but not members in full connection with the annual conference. See note 3 *supra.* Petitioner's argument would mean that only ministers in full connection with their annual conference who are ordained as elders would be ministers of the United Methodist Church for purposes of applying for the exemption from self-employment tax under sec. 1402 or for obtaining the parsonage exclusion under sec. 107. We find nothing in the statute, regulations, case law, or The Book of Discipline of the United Methodist Church that would compel such a harsh result for petitioner's fellow ministers and that could only benefit those few who might find themselves in the same peculiar factual posture as petitioner for years prior to 1983. See note 4 *supra.*

no formal licensing or ordination from a higher ecclesiastical power in the Jewish religion. *Silverman v. Commissioner, supra; Salkov v. Commissioner,* 46 T.C. at 196. In this case, a higher ecclesiastical authority in the United Methodist Church did ordain and license petitioner in 1980, indicating that he was not a self-appointed or self-proclaimed minister. Assuming that petitioner did not receive any formal training before he became a minister, that fact would be irrelevant since the United Methodist Church, unlike the Jewish faith, formally ordains and licenses its ministers rather than requiring specialized training. We note, however, that the annual journals of his annual conferences for 1982 and 1983 listed petitioner as a graduate of an approved school of theology serving under a full-time appointment as a local pastor.

In addition, petitioner argues that he could not be a minister since a probationary member of the annual conference cannot remain on probation for more than eight regular conference sessions, although one can remain as a local pastor or as an associate member of the annual conference indefinitely. See note 3 *supra.* Although the position of cantor in *Salkov* is a permanent position in the Jewish faith, the Court in that case did not rely upon the permanence of the position. Instead, the Court emphasized the ministerial functions of the cantor in its determination that the taxpayer was an ordained, commissioned, or licensed minister. *Salkov v. Commissioner,* 46 T.C. at 197-198. The fact that petitioner's role as a probationary member of the annual conference was not permanent is not a factor in determining whether petitioner was a minister. Instead, we find that petitioner's functions and duties as a licensed local pastor, ordained deacon, and probationary member of the annual conference establish that petitioner was indeed a minister beginning in 1980. We reject as unwarranted petitioner's argument that he became a minister only when he was ordained as an elder in 1984. See note 9 *supra.*

Since we have determined that petitioner was a minister from 1980 through the years before the Court, petitioner's first Form 4361, which respondent received on April 3, 1984, and petitioner's second Form 4361, which respondent

received on March 18, 1985, were both untimely. Petitioner had not filed either Form 4361 within the second taxable year in which he received net earnings of $400 or more, any part of which was derived from the performance of services in his ministry. Thus, petitioner does not qualify for the self-employment tax exemption under section 1402(c)(4) and is liable for the self-employment taxes due for 1981 and 1982.

For the foregoing reasons,

*Decision will be entered for the respondent.*