**Donald W. EADE, Cherry L. Eade, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–0671–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Nov. 26, 1991.

On Plaintiffs' Motion to Reconsider Feb. 5, 1992.

Patrick S. Shiel, Tyler M. Moore, Cranwell & Moore, Roanoke, Va., for plaintiffs.

Steven U. Baer, Asst. U.S. Atty., Roanoke, Va., Gerald A. Role, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION

KISER, District Judge.

### BACKGROUND

On November 8, 1990, plaintiffs Donald and Cherry Eade filed an action against the United States of America to recover self-employment taxes they claim to have overpaid to the Internal Revenue Service for the years 1986 and 1987. In November 1989, plaintiffs received a notice of deficiency for those years in a total amount of $5,084.00, which, with interest, resulted in an alleged overpayment to the Internal Revenue Service of a total of $6,585.25. Donald Eade claims he is entitled to a refund of that overpayment because he was ordained as a Baptist minister in January 1985 and as such he was entitled to and did claim a minister's self-employment tax exemption allowed under 26 U.S.C. § 1402(e). In order to obtain a § 1402(e) exemption, a party must timely file a Form 4631 application with the Internal Revenue Service and the application must be approved by the Internal Revenue Service.

The original issue in this cause was whether plaintiff Donald Eade mailed a properly completed Form 4361 application. Plaintiff claims to have mailed Form 4361 exemption application in April 1985, and the Internal Revenue Service claims never to have received it. On September 25, 1991 a jury determined that Donald Eade mailed a properly completed Form 4361 in April 1985 as he claimed to have done.

■ Plaintiffs' remaining post-trial claims invoke the equitable powers of this Court to determine whether plaintiff, having been found to have mailed a Form 4361

application, is entitled to the minister's § 1402(e) exemption, notwithstanding the assertion by the Internal Revenue Service that it neither received nor approved his application, and whether plaintiff may recover his claimed tax overpayment of $6,585.25. I find that because plaintiff Donald Eade had done everything he was required to do in order to claim his minister's self-employment tax exemption, I shall adhere to that maxim in equity which views that as done which should be done, *Continental Insurance Co. v. Brown et al.,* 630 F.Supp. 302, 304 (W.D.Va.1986), and I shall allow plaintiff, under 26 U.S.C. § 1402(e), his claim to a minister's self-employment tax-exempt status and the tax refund resulting from his 1990 overpayment of the assessed tax deficiencies for 1986 and 1987, including the interest plaintiffs were assessed on that overpayment.

### THE STATUTORY SCHEME

#### A. Qualifications for Exemption

Prior to 1968, a minister was automatically excluded from social security coverage and exempt from self-employment tax and had to file an application in order to be covered and made subject to the tax. This was changed by the Social Security Amendments of 1967, Pub.L. 90–248, 81 Stat. 821, 839. Subsequent to the change, a minister is subject to the self-employment tax unless he files an application for exemption within the prescribed time limit. 26 U.S.C. § 1402(e). A duly ordained, commissioned or licensed minister of a church must file the application before the later of (1) the due date of the return for the second taxable year for which the performance of services in his ministry or (2) the due date of the return for his second taxable year ending after 1967. § 1402(e)(3). These time limitations imposed by § 1402(e)(3) are mandatory and are strictly construed. *Olsen v. Commissioner,* 709 F.2d 278, 282 (4th Cir.1983).

■ In order to qualify as a "duly ordained, commissioned or licensed minister," the regulations promulgated under § 1402 describe three types of services a minister

in the exercise of his ministry performs. These services are: (1) the ministration of sacerdotal functions, (2) the conduct of religious worship, and (3) service in the control, conduct, and maintenance of religious organizations, including the religious boards, societies, and other integral agencies of such organizations, under the authority of a religious body constituting a church or church denomination. Sec. 1.1402(c)–5(b)(2), Income Tax Regs. In addition to these three types of services, the Tax Court has added two additional prongs to determine whether an applicant satisfies all three elements. First, the applicant must be ordained, commissioned or licensed, and second, the church which has ordained him must consider the applicant to be a religious leader. *Wingo v. Commissioner*, 89 T.C. 922 (October 27, 1987).

At trial, plaintiff presented uncontroverted testimony that it was a tenet of his religious belief that he and the congregation which supported him alone were responsible for his welfare and the welfare of his family. Plaintiff testified that he performed ministerial functions for the Colonial Baptist Church beginning in March 1985, that he conducted religious worship, and that Colonial Baptist Church was an independent Baptist Church under the authority of a religious body comprised of deacons drawn from members of the church congregation. As to his qualifications for the ministry, plaintiff testified, without contradiction, that he received a B.A. in bible studies from a Tennessee bible college, an M.A. in sacred literature from Liberty Baptist University, had earned credits toward Ph.D. in church administration, and had been ordained a minister in the Baptist faith on January 26, 1985 after nomination by the Ordination Committee of the Colonial Baptist Church. At that time plaintiff received a certificate of ordination. Thereafter, Colonial Baptist Church, comprised of some 300–350 active members, issued a call for plaintiff to become their pastor, which call plaintiff accepted, assuming his pastoral duties in April 1985. Applying the *Wingo* factors

and Sec. 1.11402(c)–5(b)(2) of the Income Tax Regulations criteria, I find that plaintiff meets both the 3–part test described in the Income Tax Regulations as well as the 2–prong *Wingo* test. I find that plaintiff performs in accordance with his denomination's requirements for sacerdotal function, that he conducts religious worship and provides service that is under the control, conduct and maintenance of an organized and recognized religious body constituting an independent church belonging to that denomination widely known as Baptist. Further, I find that plaintiff is an ordained minister and that Colonial Baptist Church recognizes him as its religious leader by paying him a salary to minister to the needs of its congregants.

### B. Administrative Approval of Exemption

Administrative approval of an application for an exemption filed pursuant to 26 U.S.C. § 1402(e) will be granted in accordance with the terms set forth in § 1402(e)(2). Under that section, all other criteria being met, the Secretary may approve an application for exemption if the Secretary has verified that the applicant is aware of the grounds on which he may receive an exemption pursuant to this subsection, and that the individual seeks exemption on such grounds.

According to testimony from Theresa Rollins, manager of Miscellaneous Processing at the Memphis office of the Internal Revenue Services, to which office plaintiff would have mailed his Form 4361 application, the exemption form would be submitted to the Social Security Administration if timely filed. The Social Security Administration would then verify the taxpayer's social security number and ascertain whether the church was exempt under two sections of the Code: 501(c)(3) and 170(b)(1)(A)(i). Then Ms. Rollins' unit would tentatively approve the exemption, keeping one copy of Form 4361 and mailing a signed, dated and stamped copy to the form to the taxpayer.[1] According to Ms.

---

1. Although plaintiff failed to file his application in triplicate as required by the instructions on the form, Rollins testified that the exemption would not be denied for this reason.

Rollins, it would be virtually impossible for a Form 4361 mailed to the Memphis office of the IRS to escape processing. However, Carl Goodman, an ordained minister also employed by the Colonial Baptist Church, testified that he filed Form 4361 with the IRS in 1986 and never received a notice from the IRS either approving or denying his application for the minister's self-employment tax exemption, even after mailing an inquiry to the IRS in 1989 regarding the status of his application. Mr. Goodman testified that after pursuing further inquiry, he received verbal assurance from the Roanoke branch of the Internal Revenue Service that there would be no problem with confirmation of his exempt status.

The testimony of Ms. Rollins reveals little discretionary function to be exercised by the IRS in this matter. If the information set forth in an application is correct, the granting of a Form 4361 application is perfunctory. Mr. Goodman, who belongs to and ministers in the same church as does plaintiff, testified without contradiction from Durene Fergeson, formerly an IRS tax auditor at the Roanoke office, from Jacqueline English, revenue agent for Roanoke IRS, or from David Nelms, IRS appeals officer for the Roanoke IRS office—all of whom were present and testified at trial—that he had been orally assured of his exempt status by personnel in the Roanoke IRS office. Plaintiff was found by a jury to have timely mailed his application. Plaintiff was also ordained by the same congregation that ordained Mr. Goodman. I must therefore conclude that but for the mistake either of the Post Office Department or the Internal Revenue Service, plaintiff's application would have been received, acted upon and granted.

Moreover, this cause is readily distinguishable from *Peverill v. Commissioner of Internal Revenue*, 52 T.C.M. (CCH) 75 (August 6, 1986), in which the Tax Court, in denying petitioner § 1402 exempt status, held that petitioner had failed to carry the burden of proving that he had mailed his Form 4361 application within a timely manner and as prescribed by the regulations. The Tax Court in *Peverill* found that petitioner's recollection regarding his compli-

ance with the statutory requirements of § 1402(e) were too vague and that petitioner had failed to assert that he was "conscientiously opposed to" or held "religious principles opposed to" acceptance of public insurance such as social security benefits in conjunction with his ministerial services. In this cause, a jury determined that plaintiff met his burden of timely mailing a Form 4361 application. Further, I find plaintiff's testimony bearing upon his opposition on religious grounds to accept social security benefits associated with the income he derives from ministerial service, to meet the standard set forth in § 1402(e).

██ Plaintiff asserts, incorrectly, that Congress did not mandate IRS approval as a prerequisite to the granting of tax-exempt status. Plaintiff cites 26 U.S.C. § 1402(g)(1) for the proposition that if a minister files an application "in such form and manner and with such official as may be prescribed by regulations made under this chapter," the minister receives an exemption. However, § 1402(g)(1) does not apply to ministers. § 1402(g) applies to individuals of certain recognized religious sects conscientiously opposed to acceptance of benefits such as those provided by the Social Security Act. Further, an exemption is not automatically granted under § 1402(g)(1) without a finding by the Secretary of Health and Human Services that the sect conforms to those tenets or teachings that fall within the parameters required for granting of an exemption. § 1402(g)(1)(A–E).

### CONCLUSION

For the reasons cited above, I grant plaintiffs' post-trial motion for minister's tax-exempt status under 26 U.S.C. § 1402(e), and for refund of plaintiffs' 1990 tax overpayment on assessed tax deficiencies, including interest, which plaintiffs paid for the tax years 1986 and 1987.

### PLAINTIFFS' MOTION TO RECONSIDER

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, plaintiffs ask for

**480**

amendment to the Order which I entered November 26, 1991.

Plaintiffs ask for, and as prevailing parties in this proceeding, are entitled to, an award of reasonable court costs against the United States of America. 26 U.S.C. 7430(a).

 Plaintiffs, under 26 U.S.C. 6611(a), ask for and are entitled to, prejudgment interest in respect to any internal revenue tax overpayment, at the overpayment rate established under 26 U.S.C. 6621. Interest on overpayment is not discretionary and is mandated by that section of the Internal Revenue Code.

Plaintiffs ask that I find that under the Internal Revenue Code as it existed in 1985, no approval was necessary pursuant to a minister's exemption claim filed under 26 U.S.C. 1402. Plaintiffs confuse the Internal Revenue Service's right to refuse a § 1402 exemption, which is inherent in the statutory scheme as it existed in 1985, with later amendment to that section of the code providing for a method of approving the application. The principal issue in this cause was whether plaintiff had ever filed Form 4361. Whether the Internal Revenue Service did or did not have a duty to notify plaintiff of its approval upon receipt of plaintiffs' Form 4361 does not bear in any way upon the Internal Revenue Service's statutory power to deny a § 1402 exemption.

## CONCLUSION

For the reasons cited above, I grant plaintiffs' Motion to Reconsider to the extent that plaintiff shall recover court costs sustained in this proceeding. Plaintiffs are also entitled to recover pre-trial interest on the tax overpayment pursuant to the statutory provisions of 26 U.S.C. 6611 *et seq.* I reject plaintiffs' assertion that the Internal Revenue Service lacked statutory power under the relevant sections of the 1985 Internal Revenue Code to reject plaintiffs' Form 4361 application.

## ORDER

For the reasons set forth in the accompanying Memorandum Opinion,

(1) plaintiffs' motion for costs of $160.00 is GRANTED; and

(2) plaintiff's motion for prejudgment interest, at the overpayment rate established under 26 U.S.C. § 6621(a), from Feb. 2, 1990 is GRANTED.