T.C. Memo. 2013-177

UNITED STATES TAX COURT

DONALD L. ROGERS AND VYON M. ROGERS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13138-11.                    Filed August 1, 2013.

Scott W. Gross, for petitioners.

Frederic J. Fernandez and Mark J. Miller, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

PARIS, Judge:  On March 7, 2011, respondent issued to petitioners a notice

of deficiency for tax year 2007 determining a deficiency in Federal income tax of

[*2] $29,479 and an accuracy-related penalty under section 6662(a)[1] of $5,895.80. Petitioners seek redetermination of the deficiency and the penalty.

On November 5, 2012, the parties submitted a joint stipulation of settled issues reflecting the resolution of a number of issues with respect to petitioners' 2007 tax year. The remaining issues for decision are:

(1) whether petitioners failed to report income of $43,200[2] related to Mr. Rogers' services as a pastor for tax year 2007; and

(2) whether petitioners are liable for the accuracy-related penalty imposed under section 6662(a) for tax year 2007.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The proposed stipulations deemed admitted under Rule 91(f) on October 26, 2012, the stipulation of facts filed and supplemented on November 6, 2012, and the associated exhibits received in evidence are incorporated herein by this reference. Petitioners resided in Wisconsin when the petition was filed.

---

[1]Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2]This amount consists of $30,612 in home mortgage payments, $8,268 in credit card payments, and $4,320 in utility payments made on behalf of petitioners.

[*3]    Petitioner Donald Rogers is a pastor at the Pentecostals of Wisconsin (PoW).  He was formerly employed in the fields of sales and marketing but has been involved in ministry for over 30 years.  Mr. Rogers' duties as a pastor include free home Bible studies, new life classes, men's and women's ministries, marriage outreach, youth outreach, and children's outreach.  In return for these services, PoW pays petitioners' personal credit card bills, utility bills, and home mortgage payments.[3]

Mr. Rogers registered PoW in 1995 as a nonstock corporation in the State of Wisconsin, for which Mr. Rogers was listed as a registered agent.  PoW operated in this fashion until 2005, when Mr. Rogers and other members of PoW sought dissolution of the entity in favor of setting up a corporation sole.  Mr. Rogers and the other members sought out SACM Management (SACM) to help facilitate the steps necessary to complete the conversion to a corporation sole.

On February 1, 2005, Mr. Rogers signed a document entitled "Vow of Poverty, Statement of Faith" detailing that any donation/honorarium, and/or and endowment given to Mr. Rogers personally will be considered the property of

---

[3]The mortgage payments made by PoW on petitioners' behalf were for a house solely owned by petitioners and titled in their names.  The house was originally transferred to PoW in 1995 but was transferred back to petitioners in 1997.

**[*4]** PoW, and that PoW will in turn provide for Mr. Rogers' needs.  The document further states that

> [Mr. Rogers] further understands that any honorarium, donation, and/or endowment received by * * * [him] when performing ministerial duties among <u>any other</u> membership of the ecclesiastical church body or among the public <u>that is required by the church</u> is not mine personally, but is actually that of * * * [PoW] and will be turned over to same. * * * Even though * * * [Mr. Rogers] has taken this vow of poverty, * * * [he] further understands that any income/wages * * * [he] would received outside of * * * [PoW] that is <u>not done</u> on behalf of, or is <u>not required</u> by church ministry, is considered a third party and will be considered income to * * * [him] and is taxable.

On February 22, 2005, an entity registered as "The Office of Presding [sic] Pastor Donald L. Rogers and his successors, a Corporation Sole" was created in the State of Nevada.  On April 14, 2005, PoW filed articles of dissolution in the State of Wisconsin.  Despite the corporation sole's having been set up as a Nevada entity with a Nevada address, PoW continued to operate in the Milwaukee, Wisconsin, area.

In tax year 2007 various amounts were paid on petitioners' behalf by PoW in return for Mr. Rogers' ministerial services.  PoW made $30,612 of home mortgage payments, $8,268 in personal credit card payments, and $4,320 of utility payments on petitioners' behalf for a total of $43,200.  Petitioners timely filed a joint Federal income tax return for tax year 2007 by April 15, 2008.  On their

**[*5]** return, petitioners reported wage income from Victory Christian Academy of $53,770. Petitioners also reported itemized deductions for home mortgage interest and charitable contributions of $17,965 and $10,820, respectively. Petitioners did not report any income from amounts PoW paid on their behalf, nor did they file a timely certificate of exemption from self-employment tax in accordance with section 1402(e).

On March 7, 2011, respondent issued to petitioners a notice of deficiency for tax year 2007, determining a deficiency of $29,479 and an accuracy-related penalty under section 6662(a) of $5,895.80. This determination reflected, in part, respondent's finding that petitioners failed to report $43,200 of taxable income[4] for amounts PoW paid on their behalf for tax year 2007.[5] On June 3, 2011, petitioners timely filed a petition in this Court for redetermination.

---

[4]The notice further determined that this income should be reported as profit or loss from a business and that petitioners were liable for self-employment tax on that income.

[5]The remainder of respondent's determinations have been resolved through the stipulation of settled issues lodged by the parties on November 5, 2012, as referenced above.

[*6]                               OPINION

I.  Underlined Income

Section 61(a) defines gross income as "all income from whatever source derived", including compensation for services.  This definition includes all accessions to wealth, clearly realized, and over which the taxpayers have complete dominion.  Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955).

Section 1401 imposes a tax on an individual's self-employment income, which is defined as the "net earnings from self-employment" derived by an individual during a taxable year.  Sec. 1402(b).  "Net earnings from self-employment" is the gross income derived by an individual from any trade or business carried on by that individual less the deductions attributable to that trade or business.  Sec. 1402(a).  Pursuant to section 1402(c)(4), a "duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" is engaged in carrying on a trade or business unless the minister is exempt from self-employment tax pursuant to section 1402(e).  Unless an exemption certificate is timely filed, the minister is liable for self-employment tax on income derived from the ministry.[6]  Sec. 1402(e)(3).  The time limitation imposed by section 1402(e)(3)

---

[6]The operative document used to apply for this exemption is Form 4361, Application for Exemption From Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners.

**[\*7]** is mandatory and is to be complied with strictly. <u>Wingo v. Commissioner</u>, 89 T.C. 922, 930 (1987); <u>Bennett v. Commissioner</u>, T.C. Memo. 2007-355; sec. 1.1402(e)- 3A, Income Tax Regs. Petitioners did not file a timely application for exemption from self-employment tax for tax year 2007. Petitioners therefore do not qualify for an exemption from self-employment tax for amounts PoW paid on their behalf.

Section 107 provides that gross income does not include, in the case of a minister of the gospel, "the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home". In order for a minister to be eligible for this exclusion, the following requirements must be met: (1) the home or rental allowance must be provided as remuneration for services which are ordinarily the duties of a minister of the gospel; (2) before the payment of this rental allowance, the employing church or other qualified organization must designate the rental allowance pursuant to official action, which may be evidenced in an employment contract or by any other appropriate instrument; and (3) the designation must be sufficient in that it clearly identifies the portion of the minister's salary that is the rental allowance. Sec. 1.107-1(a) and (b), Income Tax Regs.

[*8]   There is no evidence that a rental allowance was designated in an official action between PoW and petitioners.  In fact, Mr. Rogers testified at trial that PoW never considered the mortgage payments made on petitioners' behalf to be parsonage allowances.  Accordingly, petitioners are not entitled to exclude mortgage payments PoW made on their behalf as a parsonage allowance under section 107.

Petitioners failed to avail themselves of either the exemption from self-employment tax under section 1402(e) or the exclusion for rental allowance under section 107.  Instead, petitioners' primary contention at this point is that Mr. Rogers' vow of poverty insulated them from being taxed on the compensation they received for Mr. Rogers' services to PoW.

Petitioners point to several cases and a revenue ruling issued by the Commissioner to illustrate that while members of religious orders who have taken a vow of poverty are subject to tax for income received in their individual capacities, they are not subject to tax on income received by them merely as agents of the orders of which they are members.  See Schuster v. Commissioner, 800 F.2d 672, 677 (7th Cir. 1986), aff'g 84 T.C. 764 (1985); Fogarty v. United States, 780 F.2d 1005, 1012 (Fed. Cir. 1986); McEneany v. Commissioner, T.C. Memo. 1986-413; Rev. Rul. 77-290, 1977-2 C.B. 26.  However, petitioners' reliance on these

**[\*9]** authorities is misguided.  In each of these cases, the taxpayer was paid a salary by a third party and remitted this salary to the religious order by assignment in accordance with the vow of poverty.

Here, petitioners did not receive a salary from a third party and did not remit any income to PoW by assignment.  Mr. Rogers provided services to PoW and received compensation for those services in the form of payments PoW made on petitioners' behalf.  The critical difference is that, in this case, there was no income transferred to PoW from petitioners pursuant to their vow of poverty.  The mortgage payments PoW made were applied toward a house owned solely by petitioners and titled in petitioners' names.  Similarly, the credit card payments and utility payments PoW made on behalf of petitioners served only to benefit petitioners in meeting their basic living expenses.  It would be a mischaracterization of the facts to state that petitioners were paid a "salary" as agents of PoW and that this salary was assigned for the benefit of PoW when, in fact, no such salary was paid and all income issued to petitioners was used solely for their benefit.  Accordingly, the authorities cited by petitioners are inapplicable in this particular case.

PoW paid $43,200 on petitioners' behalf for tax year 2007, consisting of $30,612 in home mortgage payments, $8,268 in credit card payments, and $4,320

[*10] in utility payments. Petitioners failed to show that they were entitled to an exemption from self-employment tax for these amounts under section 1402(e). Petitioners likewise failed to show that they were entitled to exclude mortgage payments PoW made on their behalf as a parsonage allowance under section 107. Accordingly, respondent's determination that petitioners received $43,200 of unreported self-employment income for tax year 2007 is sustained.

II. Section 6662(a) Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes an accuracy-related penalty equal to 20% of an underpayment attributable to any substantial understatement of income tax. Under section 7491(c), the Commissioner has the burden of production to show that the imposition of a penalty under section 6662(a) is appropriate. However, this does not mean the Commissioner bears the burden of proof with regard to penalties, only that the Commissioner "must come forward with sufficient evidence indicating that it is appropriate to impose the relevant penalty." Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Further, the Commissioner does not have the burden to introduce evidence regarding reasonable cause or substantial authority. Id.

Section 6662(d) defines a "substantial understatement" of income tax as one which exceeds the greater of: (1) 10% of the amount of tax required to be shown

**[\*11]** on the return; or (2) $5,000. In a case such as this where the return shows a zero tax liability, the understatement and the amount of tax required to be shown on the return are the same. Accordingly, the understatement of income tax will be "substantial" only if the amount of tax required to be shown on the return exceeds $5,000.

No penalty will be imposed under section 6662(a) if the taxpayer establishes that he acted with reasonable cause and in good faith. Sec. 6664(c)(1). Circumstances that indicate reasonable cause and good faith include reliance on the advice of a tax professional or an honest misunderstanding of the law that is reasonable in light of all the facts and circumstances. Sec. 1.6664-4(b), Income Tax Regs. The taxpayer has the burden of proving that he acted with reasonable cause and in good faith. Rule 142(a); Higbee v. Commissioner, 116 T.C. at 446-447. Regulations promulgated under section 6664(c) further provide that the determination of reasonable cause and good faith "is made on a case-by-case basis, taking into account all pertinent facts and circumstances." Sec. 1.6664-4(b)(1), Income Tax Regs.

It may be argued that petitioners acted with reasonable cause and in good faith when they relied on advice from SACM to set up a corporation sole structure for PoW. However, Mr. Rogers testified at trial that he and the members of PoW

[*12] had done the research over a number of years and decided to convert PoW to the corporation sole structure. He further testified that they sought SACM's advice merely to effect the organization of PoW as a corporation sole. It is clear that the members of PoW chose to convert PoW into a corporation sole and that any reliance on SACM was in the execution of that decision. Accordingly, petitioners did not rely on a tax professional such that the reliance would constitute reasonable cause under section 6664(c)(1).

Alternatively, it may be argued that petitioners made a reasonable and honest mistake of law that using the corporation sole structure in conjunction with their vow of poverty would exempt them from tax on amounts PoW paid on their behalf. In actuality, restructuring PoW as a corporation sole on its own did nothing to shield petitioners from tax on the amounts paid on their behalf. Petitioners' understanding of the pertinent law seems to be that the vow of poverty protects them from income tax in all circumstances, particularly when the religious entity is set up as a corporation sole. Petitioners mistook the body of law surrounding the vow of poverty to apply to their circumstances. As explained above, it does not. Petitioners' failure to avail themselves of the established exemption under section 1402(e) in favor of the tenuous corporation sole theory

**[\*13]** they espoused was not a reasonable mistake of law given all the facts and circumstances.

Petitioners have failed to present a colorable argument that they acted with reasonable cause and in good faith in filing a tax return reflecting zero income tax due for tax year 2007. Accordingly, if the final computations under Rule 155 reflect an understatement of income tax exceeding $5,000 for tax year 2007, petitioners will be liable for the accuracy-related penalty under section 6662(a).

Respondent alternatively asserts that if the understatement of income tax for tax year 2007 does not exceed $5,000, petitioners should still be liable for the accuracy-related penalty under section 6662(b)(1) because they acted with negligence or disregard of rules or regulations. Negligence is defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985); sec. 1.6662-3(b)(1), Income Tax Regs. While the Court finds that petitioners' mistake of law in this instance was not reasonable for the purposes of establishing reasonable cause, the Court will not go so far as to say that petitioners acted with negligence or disregard of rules and regulations in the preparation of their 2007 return. Accordingly, if petitioners' understatement of income tax for tax year 2007 does not exceed $5,000 (i.e., it is not a "substantial" understatement),

**[\*14]** petitioners will not be liable for the accuracy-related penalty for an underpayment of tax attributable to negligence under section 6662(b)(1).

The Court has considered all of the arguments made by the parties and, to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155</u>.