ROBERT D. LAWRENCE, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4462–66.    Filed June 13, 1968.

Robert D. Lawrence, pro se.
*Charles G. Barnett*, for the respondent.

MULRONEY, *Judge:* Respondent determined the following deficiencies in the income taxes of petitioner:

| Year | Deficiency |
|------|-----------|
| 1963 | $324.19 |
| 1964 | 206.33 |

The issue remaining after certain concessions is whether petitioner is a "minister of the gospel" within the provisions of section 107, I.R.C.

1954,[1] and thus entitled to exclude amounts received by him as a rental allowance from his gross income under section 107(2).

The record in this case consists of a stipulation of facts and the deposition of petitioner. The stipulated facts are so found.

### FINDINGS OF FACT

Petitioner resides in Springfield, Tenn., and he filed his income tax returns for 1963 and 1964 with the district director of internal revenue at Nashville.

Petitioner was graduated from Howard College, Birmingham, Ala., in 1950 with a bachelor of arts degree. He attended the Southwestern Baptist Theological Seminary in Fort Worth, Tex., during 1950, 1951 and 1952, earning a "Master's Degree in Religious Education." In 1958 petitioner was employed as minister of education at the Springfield Baptist Church, Springfield, Tenn. On May 24, 1961, the Southern Baptist Convention, of which the Springfield Baptist Church is a member, adopted a resolution which read as follows:

> Therefore, be it resolved: That we declare the fact, in order to clarify the status of those serving as ministers of education, ministers of music, and those serving in the administration and maintenance of religious organizations and their integral agencies who have been ordained, commissioned, or licensed by a church as such, or who have been commissioned by a denominational convention or its integral agencies to serve in an administrative capacity or as missionaries for and in that convention and who are deemed to be serving in the capacities as stated above, that they shall be recognized as commissioned ministers of the gospel.

The minutes of the Springfield Baptist Church dated October 4, 1961, provide in part as follows:

> we commission Bob Lawrence as Commissioned Minister of the Gospel in Religious Education that he may receive benefits of laws relative to the Social Security Act and Internal Revenue Services.

On November 8, 1961, a motion was made, seconded, and passed that the church set the effective date of this commissioning as January 1, 1962.

During the time he was at the Springfield Baptist Church, petitioner's principal duties included the administration of the educational and service organizations of the church. These organizations were the Sunday School, the Training Union, the Women's Missionary Organization, the Baptist Brotherhood, the youth program, and the visitation program. In addition to the overall supervision of these programs, he trained the organizations' teachers and workers, solicited new mem-

---

[1] Unless otherwise noted, all references hereinafter shall be to the Internal Revenue Code of 1954.

bers for the church, visited the sick, provided spiritual counseling, and assisted in the regular worship services.

The Springfield Baptist Church, as is the case with Southern Baptist churches in general, is completely autonomous and does not answer to any hierarchical authority. Its association with the Southern Baptist Convention is purely voluntary. The Convention itself exercises no dominion or control over its member churches. The governing unit at the Springfield Baptist Church is the congregation itself.

According to the general practice in Southern Baptist churches, Springfield Baptist Church has two "Ordinances" which closely resemble sacraments administered in other faiths. They are baptism and the Lord's Supper. The Springfield pastor officiates at the baptisms and the Lord's Supper and he presides over the worship service. The pastor is an ordained minister of the gospel and his principal role, according to practice and generally accepted Southern Baptist theology, is to preach at the worship service.

The basic service at Springfield Baptist Church is held on Sunday morning. It consists of a reading of the announcements, prayer, and preaching. The church also has regular Sunday evening and Wednesday evening services. The pastor ordinarily officiates at all of these services. On occasion the petitioner has filled in for the pastor and he has preached and led the congregation in worship, but this was due to unusual circumstances such as the sudden illness of the pastor.

Petitioner's regular function at the Sunday worship service is to make all of the pulpit announcements and to offer the opening prayer. When the pastor is away or ill, a "visiting preacher" is generally invited to preach at the Sunday service. On these occasions, petitioner officiates at the worship service and introduces the visiting pastor. During a period of approximately 1 year when the congregation was without a regular pastor a minister from Nashville led the congregation in worship. Petitioner has occasionally participated in funeral services but not in a baptismal service or the Lord's Supper.

Religious education of the members of the church—particularly of the Sunday School youth—is an important part of Southern Baptist religious life. At the Springfield church, the Sunday School meets each Sunday morning, the Training Union, Sunday evening, and all educational organizations meet Wednesday night, which is called "family night." It is stipulated:

In each of the years 1963 and 1964 the Springfield Baptist Church paid the petitioner a "rental allowance" of $900.00. The amounts so paid the petitioner were expended by the petitioner for the purpose of securing and maintaining housing accommodations. The amounts paid to the petitioner as "rental allowance" during the taxable years 1963 and 1964 were not reported as taxable income on his income tax returns for said years.

Respondent's notice of deficiency added the $900, designated as "house allowance" to petitioner's income for each of the years involved on the ground that he was not a "minister as provided by Section 107 of the 1954 Internal Revenue Code."

The issue is whether petitioner is entitled under section 107 to exclude from gross income the $900 he received as rental allowance during each of the years 1963 and 1964.

Section 107(2) provides that, in the case of a "minister of the gospel, gross income does not include—* * * (2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home."

It is respondent's contention that petitioner was not a "minister of the gospel" within the meaning of the statute. There is no definition in the statute of the phrase "minister of the gospel" and the legislative history of the statute contains no clear statement as to the meaning to be ascribed to the term "minister of the gospel." The Commissioner's regulations under section 107 do not attempt to define the term "minister of the gospel." They undertake to state certain requirements with respect to the rental allowance paid to a minister of the gospel as part of his compensation before the said rental allowance will qualify for the exclusion of section 107. The regulations provide the rental allowance must be remuneration for certain services. They go on to describe the services and give examples of specific services the performance of which by a minister of the gospel will be within the required area for the rental allowance exclusion. See secs. 1.107–1; 1.1402(c)–5, Income Tax Regs. The regulations are only intended to apply to persons otherwise qualified as ministers of the gospel who are engaged in teaching and administrative duties at theological seminaries or engaged in other named church or religious activities.

Since the statutory phrase "minister of the gospel" stands without legislative or administrative explanation or definition we must give it its ordinary conventional meaning. The term "minister" is defined in Webster's Dictionary [2] as "One duly authorized or licensed to conduct Christian worship, preach the gospel, administer the sacraments, etc.; esp., a pastor; a clergyman; * * *"

As stated earlier, the record in this case consists of a stipulation of some facts and petitioner's deposition. The case was submitted pursuant to the joint motion of the parties to submit the case under Rule 30. No attorney's name appears on the petition filed by petitioner and he was not represented by counsel in the execution of the stipulation

---

[2] Webster's New International Dictionary (2d ed. 1960.)

or the taking of his deposition. Petitioner made no oral argument and he has filed no written brief or argument. We must examine the allegations in the petition to ascertain petitioner's position with respect to his claimed right to exclude the designated rental allowance from his gross income.

Petitioner alleges in his petition that respondent erred with respect to the inclusion of the "house allowance" in his 1963 and 1964 income and the petition goes on to state:

The facts upon which the petitioner relies as the basis of this case are as follows:

A. That I am recognized by my church as a commissioned minister of the gospel and perform the duties of such.

From this allegation in the petition, and it is all we have to indicate the basis for petitioner's contention, we must assume petitioner is arguing he was a "minister of the gospel" within the meaning of the statute because (1) he was recognized and commissioned by his church as a minister of the gospel and (2) he performed the duties of a commissioned minister of the gospel.

There is no evidence that petitioner was recognized by his church as a minister of the gospel. He was hired as minister of education. The recitation in the minutes of the church of October 4, 1961, wherein he is commissioned as "Commissioned Minister of the Gospel in Religious Education that he may receive benefits of laws relative to the Social Security Act and Internal Revenue Services" shows on its face that this was nothing more than paperwork procedure designed to help him get a tax benefit from "Internal Revenue Services" without giving him any new status. Petitioner frankly testified his authority and duties were in no way changed by the 1961 commission. He said the commissioning was prompted by some statement at the Southern Baptist Convention "that the people in this particular field could now receive house allowances from the government if they were commissioned."

There is no other statement in the record that even remotely indicates there was any recognition on the part of the Springfield Baptist Church that he was a minister of the gospel. Indeed, petitioner's own testimony is that when he spoke of someone in the ministry he referred to one who had been ordained into the Baptist ministry and he described the laying on of hands ceremony included in the ordination by the church congregation of a person requesting to be ordained as a Baptist minister. A person ordained by one congregation would be accepted as a Baptist minister by another congregation.

The Baptist religion is one of the large Protestant religions. It has numerous churches and congregations and many thousands of mem-

bers who attend regular religious services conducted by its church-employed ordained ministers. These ministers are admittedly ministers of the gospel. Petitioner, a nonordained church employee, asks us to hold he, too, has the status of a minister of the gospel because his church recognizes him as such. It would seem that the least he could do is have someone from his church, preferably the pastor, testify as to such recognition.

Petitioner testified that during the years in question he was not an ordained minister.[3] He stated he was minister of education and that the history of the Baptist religion shows that there was a good deal of feeling among Baptists that persons in his position as minister of education should be ordained. But he said this was not done and he added "during World War II people who were doing the kind of work that I do were drafted and were not given the same status as ministers."

The record does not support petitioner's allegation that he was recognized by his church as a minister of the gospel.

Petitioner's second allegation is that he qualifies as minister of the gospel because he performed the duties of a minister of the gospel. In our findings of fact we have detailed the duties petitioner performed. Since he was employed by a church his duties were all in the area of religion. However, it is more important to note the religious rites and ceremonies which petitioner did not perform. It is significant petitioner never administered the ordinances of baptism or the Lord's Supper.

Paragraph 4 of the stipulation of facts is as follows:

The petitioner, while serving the Springfield Baptist Church, has occasionally participated in some funeral services held at said Church although it is not customary for him to do so. While serving said Church, the petitioner has performed no baptismal services. The petitioner does not customarily officiate during his Church's observance of the ordinances of the Lord's Supper.

In his deposition petitioner stated that he had never administered the ordinances of baptism or the Lord's Supper and never assisted the regular pastor in the administration of these ordinances. In this deposition he also said it was only in emergencies, such as the pastor's sudden illness, that he would fill in for the pastor and lead the congregation in worship. He said he and sometimes other lay members would lead the congregation in prayer and they might occasionally occupy the pulpit. Even if it be thought one could qualify as a minister of the gospel by showing duties performed, we would hold the evidence of services performed insufficient to warrant a finding that petitioner

---

[3] He testified he was ordained a minister in 1967.

had attained the status of a minister of the gospel in the years in question.

Our conclusion that petitioner was not a minister of the gospel is not in conflict with *Abraham A. Salkov*, 46 T.C. 190. There we felt we had to so apply the statute as not to exclude the Jewish religion where, literally speaking, there could be no ministers of the gospel.[4] We considered the services performed by the taxpayer for we had to decide whether the office of cantor in a Jewish synagogue was the equivalent of that of a minister of the gospel in a Christian church. We held it was but there was much evidence that the services performed by a cantor in the Jewish religion were the same in significance and effect as those performed by a minister of a Christian church. There the cantor and the rabbi under whom he served testified they both performed the same religious functions for their congregations. It appeared the one function reserved to the rabbi is deciding questions of Jewish law. The record showed that within the synagogue there were equal pulpits for the rabbi and the cantor and the latter probably spent more time in the pulpit than the rabbi. They both wore ecclesiastical robes and jointly conducted the weekly religious ceremonies and the religious ceremonies on festivals and high holidays. They both officiated at weddings, funerals, and at houses of mourning. Respondent admitted the rabbi was the equivalent of a minister of the gospel in a Christian religion and we held the cantor who performed the same functions as the rabbi, except for dealing with problems of Jewish law, should likewise be treated as the equivalent of a minister of the gospel within the intendment of section 107.

The record here is quite different. The pastor of the church under whom petitioner served did not testify. As pointed out earlier, the designation for tax purposes does not constitute a recognition by the church that he was in fact a minister of the gospel. And even if it be thought the status of minister of the gospel in the Baptist religion could be established by proof of services performed, the evidence falls far short of showing the prescribed duties of a minister of education are equivalent to the services performed by a Baptist minister.

We hold petitioner failed to sustain his burden of proving that he was a minister of the gospel within the meaning of section 107 during the years in question.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

[4] In *Salkov* our analysis started with this sentence: "Although 'minister of the gospel' is phrased in Christian terms, we are satisfied that Congress did not intend to exclude those persons who are the equivalent of 'ministers' in other religions."

DAWSON, J., dissenting: I respectfully disagree with the majority opinion. In applying the provisions of section 107, I see no reason for the majority's speculation about the relevancy of duties performed by petitioner, since section 1.107–1(a) of the Income Tax Regulations, whose validity is not questioned, provides:

In order to qualify for the exclusion, the home or rental allowance must be provided as *remuneration for services which are ordinarily the duties of of a minister of the gospel.* In general, the rules provided in § 1.1402(c)–5 will be applicable to such determination. [Emphasis supplied.]

Section 1.1402(c)–5 adds that such *services* include (1) the ministration of sacerdotal functions, (2) the conduct of religious worship, and (3) the direction of organizations within the church.

Fairness and consistency in applying the provisions of section 107 can only be obtained by reference in each case to the particular services rendered and duties performed by the "minister" claiming the benefit of the exclusion.

I firmly believe that this record contains sufficient proof that the petitioner spent his full time during the years 1963 and 1964 performing for the congregation of the Springfield Baptist Church services of all three types. He ministered to the sick. He conducted funeral services. He made the pulpit announcements and the opening prayer at the Sunday worship service and, on occasion, he preached and led the congregation in worship. He often conducted the Wednesday night worship service, especially during the year when the church had no regular pastor. He had under his supervision and direction the administration of the educational and service organizations of the Springfield Baptist Church. These included the Sunday School, the Training Union, the Women's Missionary Organization, the Baptist Brotherhood, and the youth program. Petitioner was trained for the ministry at the Southwestern Baptist Theological Seminary, and he functioned as one of the religious leaders of his church in a real sense.

In my optic the majority has inappropriately withdrawn to the safe harbor of burden of proof. This is not a case where the petitioner has failed to produce credible evidence to support the exclusion and where he has asked this Court to render a decision based upon inference and speculation. The findings of fact made herein establish all elements necessary to support the exclusion.

The undercurrent of the majority opinion seems to be that ordination is the touchstone for qualification under section 107. The only regulatory gloss upon the phrase "minister of the gospel" is found in section 1.1402(c)–5, Income Tax Regs., which substitutes for it "a duly

502

ordained, commissioned, or licensed minister of a church or a member of a religious order." [1]

This Court held in *Abraham A. Salkov*, 46 T.C. 190 (1966), that the words "ordained, commissioned, or licensed" are to be applied in the disjunctive. The question raised in *Salkov* was not whether the phrase "minister of the gospel" precluded officials in other than the Christian religion from the benefits of section 107. The Commissioner did not so contend, for his announced position at the time was that an *ordained* rabbi does qualify for the exclusion. Rev. Rul. 58-221, 1958-1 C.B. 53. On the other hand, it was his position that a cantor who was *not ordained* did not qualify. Rev. Rul. 61-213, 1961-2 C.B. 27. In *Salkov* we held that a cantor who performed many, but not all, of the functions normally performed by a rabbi and who was commissioned, but not ordained, was for the purposes of section 107 a "minister of the gospel."

The clear import of the regulations and the *Salkov* opinion is that a person qualifies for the rental allowance if he performs the required ministerial services in some official capacity. It is sufficient if his church or religious order recognizes him by ordination, commission, or license.

In the face of its finding that the Springfield Baptist Church "is completely autonomous and does not answer to any hierarchial authority" and the petitioner's deposition that "it is the local church that makes the determining decision whether a person is qualified to be commissioned or ordained," the majority holds that the resolution of the Springfield Baptist Church commissioning petitioner was mere "paperwork." I think this is plainly wrong. When it is found that a person performs the required ministerial services I think it is beyond the province of this Court to examine the motives behind the official acts of his religious organization.

In *Salkov*, we intended, I thought, to give the rather unusual statutory phrase "minister of the gospel" a reasonably expansive, pragmatic meaning. Certainly the interpretation placed on the phrase by the majority here, in light of the facts, strikes me as being out of harmony with the intent and spirit of our *Salkov* opinion. Whether done

---

[1] The phrase may well be equated with "regular minister of religion" used in the Selective Service statute, 50 U.S.C. App. sec. 466(g)(2), which means "one who as his customary vocation preaches and teaches the principles of religion of a church, a religious sect, or organization of which he is a member, without having been formally ordained as a minister of religion, and who is recognized by such church, [religious] sect, or organization as a regular minister." See *Application of Kanas*, 385 F. 2d 506 (C.A. 2, 1967), citing *Salkov* with approval. See also *Dickinson* v. *United States*, 346 U.S. 389 (1953), involving a Jehovah's Witness ; *Rowell* v. *United States*, 223 F. 2d 863 (C.A. 5, 1955) ; and *Reutkemeier* v. *Nolte*, 161 N.W. 290, 292-293 (Iowa 1917), holding that ruling elders are "ministers of the gospel" within the meaning of the Presbyterian Confession of Faith. Surely this petitioner would qualify as a "regular minister of religion."

consciously or not, the majority has weakened the underpinnings of *Salkov*. Moreover, I view the majority opinion as being more narrow and restrictive than the Commissioner's own rulings. See and compare Rev. Rul. 59–270, 1959–2 C.B. 44; Rev. Rul. 64–326, 1964–2 C.B. 37; Rev. Rul 63–156, 1963–2 C.B. 79; Special Ruling, Sept. 1, 1955, 1968 C.C.H. par. 1103.33.

Accordingly, under these facts and circumstances, I would hold that the petitioner is a recognized, commissioned religious and spiritual official of the Springfield Baptist Church who in 1963 and 1964 performed full-time services which qualified him as a "minister of the gospel" within the spirit, meaning, and intendment of section 107.

FAY, SIMPSON, and FEATHERSON, *JJ.*, agree with this dissenting opinion.