DAVID SILVERMAN AND IRENE SILVERMAN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4762-69. Filed March 9, 1972.

*Herbert S. Garten, Sheldon G. Dagurt,* and *M. Arnold Lyons,* for the petitioners.

*Robert H. Burgess,* for the respondent.

IRWIN, *Judge:* Respondent has determined the following deficiencies in petitioners' income taxes:

| Year | Deficiency |
| --- | --- |
| 1962 | $602.05 |
| 1963 | 600.91 |

Male petitioner is a full-time cantor of the Jewish faith. The narrow issue for decision is whether he is a "minister of the gospel" for purposes of the rental allowance exclusion afforded by section 107 of the Code.[1]

#### FINDINGS OF FACT

Petitioners are husband and wife residing in Minneapolis, Minn. Their joint income tax return for the taxable period was filed with the district director of internal revenue in St. Paul, Minn. David Silverman, hereafter the "petitioner," is a full-time cantor of the Jewish faith. During the years in question he served as the cantor of the Beth El Synagogue in Minneapolis and he has served continuously in that capacity since being "called" to that congregation in 1957.

As compensation during 1962 and 1963, petitioner received a parsonage allowance of $4,500 per annum. In 1962 and 1963, petitioner incurred housing expenses of $2,971.19 and $2,902.92, respectively. In

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

each year, the amount of the allowance utilized for housing expenses was excluded by petitioner from his gross income as per section 107 of the Code.[2] The balance of the allowance in each of the years not used for excludable expenses was reported by petitioner as gross income.

As cantor, petitioner's principal duties revolved around his conduct of the Jewish liturgy. Petitioner officiated with the rabbi at virtually all of the synagogue's services; he coofficiated with the rabbi at weddings and at funerals; he participated with the rabbi in the conduct of services in homes of mourning; he trained boys in the congregation for their entrance into adult Jewish life; and he controlled the entire musical program of the congregation which was under the direction of a choir director.

Petitioner began his training for the cantorate when he was a youngster under the direction, supervision, and guidance of his father and brother, both of whom were cantors. Throughout the history of Judaism, it has been quite common for a cantor to be trained and qualified by studying with his father, who was also a cantor, or with another cantor. This very personal type of training still is found today although formal schools have been established to provide such training. It was by virtue of petitioner's training with his father and brother that he became a cantor.

From January 1943 to February 1946, he served in the U.S. Army. Petitioner then attended Roosevelt University College of Music in Chicago, Ill. He also studied at Beth Hamidrash LaTorah Seminary in Chicago. In 1947, he accepted the position of cantor at the Beth El Synagogue in Baltimore. From this time until 1957, petitioner went on to serve as cantor in synagogues in Milwaukee, Miami Beach, and Wilkes-Barre.

As of November 14, 1949, petitioner was commissioned by the Cantors Assembly of America as a cantor hazzan-minister with full authority to exercise his ministry in the conduct of religious services and performance of the sacerdotal rites of Judaism. The Cantors Assembly of America is affiliated with the Jewish Theological Seminary of America which is the major educational organization within the conservative branch of Judaism.

Petitioner's acceptance into the Cantors Assembly of America was accompanied by a commission which read in part as follows:

---

[2] SEC. 107. RENTAL VALUE OF PARSONAGES.

In the case of a minister of the gospel, gross income does not include—

(1) the rental value of a home furnished to him as part of his compensation; or

(2) the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home.

## THE CANTORS ASSEMBLY OF AMERICA

To all persons to whom these presents may come and to all congregations of the Jewish Faith

GREETINGS:

BE IT KNOWN THAT

### REVEREND DAVID I. SILVERMAN

having duly completed the studies and satisfied the requirements for entry into the Hazzan Ministry known as the Cantorate, and having met the personal and religious standards and qualifications required by the Cantors Assembly of America and by the Jewish Faith for a Hazzan-Minister is hereby duly commissioned as a Cantor Hazzan-Minister with full authority to exercise his ministry in the conduct of religious services and in the performance of the sacerdotal rites of Judaism, and is hereby given all the rights, privileges and immunities appertaining to that of a

HAZZAN-MINISTER of the JEWISH FAITH.

"Our God and God of our Fathers inspire the lips of those who have been designated by Thy people, the House of Israel, to stand in prayer before Thee, to beseech and supplicate Thy Presence for them".

The words characterizing the appointment of an individual as cantor of a synagogue are termed the acceptance of a "call." In 1957, he accepted the "call" to serve as cantor at Beth El Synagogue in Minneapolis. At Beth El, the selection of the congregation's spiritual leadership is controlled by the synagogue's executive committee which in this case "called" petitioner and made arrangements for him to become cantor at Beth El. Petitioner was installed as cantor at Beth El on a Friday night in November 1957.

The Jewish religion is a lay religion. It has no theologically required hierarchy having control, dominion, or jurisdiction over its sacerdotal functions and religious worship. In the Jewish religion, it is not required that some ecclesiastical body formally "ordain" cantors before they are "called" by a synagogue. In the synagogue, there are equal pulpits for the cantor and the rabbi. Both the cantor and the rabbi wear similar ecclesiastical robes which distinguish them from the rest of the congregation. The interpretation of Jewish law (the law of the Talmud) is a function performed solely by the rabbi.

The purpose of the cantor while officiating at services is to act as a representative of the congregation in prayer and to lead the congregation in the liturgy. The cantor expresses the prayers and longings of the congregation to God. The cantor must have extensive knowledge of Jewish law and tradition and his excellence is judged by the sincerity of his expression of his congregants' prayers.

Petitioner has an office in Beth El Synagogue for his use and his name is listed in the telephone book as "Silverman, Reverend David I."

The announcement bulletin of Beth El Synagogue typically states that the cantor and the rabbi will officiate at the services in the synagogue.

Respondent determined that for 1962 and 1963 petitioner was not a "minister of the gospel" as per section 107 of the Code and that he should not have excluded from his gross income in those years the amount of his annual rental allowance utilized for housing expenses.

## OPINION

The issue before us involves the eligibility of a cantor of the Jewish faith for the rental allowance exclusion provided by section 107 of the Code. The duties performed by petitioner as cantor of Beth El Synagogue in Minneapolis are, in most respects, identical to those performed by the cantor-petitioner in *Abraham A. Salkov*, 46 T.C. 190 (1966), nonacq. 1969–2 C.B. XXVI. In *Salkov*, this Court found that a full-time cantor of the Jewish faith, commissioned by the Cantors Assembly of America, called and installed by a congregation, was a "minister of the gospel" within the meaning of that term under section 107 of the Code and, therefore, entitled to the exclusion.

The *Salkov* case preceded another opinion of this Court, *Robert D. Lawrence*, 50 T.C. 494 (1968), in which petitioner, a minister of education in a Baptist church, was denied the benefits of section 107. In that case, Lawrence was not an ordained minister and the church with which he was connected had a regular pastor who was an ordained minister. The *Lawrence* opinion turned on petitioner's failure to sustain the burden of proving that he was a "minister of the gospel" within the meaning of section 107. In his dissent to the *Lawrence* case, Judge Dawson felt that there was a sufficient proof in the record to find for petitioner Lawrence and that the majority opinion implied that formal "ordination" was a requirement for allowing the section 107 exclusion.

Respondent here emphasizes "ordination" as a touchstone for allowing the section 107 exclusion, with such ordination being bestowed by some official ecclesiastical body. Also, respondent asserts that the mere fact that an individual may perform the functions of a minister of the gospel is not sufficient in itself to qualify the individual for the rental allowance exclusion. Respondent's argument is grounded in a strict and narrow construction of the exclusion; i.e., that only an individual authorized by his religion to perform *all* of the ecclesiastical duties of the religion can qualify as a minister of the gospel.

As a judicial body, we are loathe to evaluate and judge ecclesiastical authority in the various religious disciplines. We must emphasize that in section 107 cases, as in all of our cases, the findings of fact and opinion are based on the evidence and proof presented in each case. It is within these constraints that we judge candidates for the section 107 exclusion. It is from the record before us that we determine the

nature of the religious discipline under scrutiny, the ecclesiastical authority, if any, in that religion, and the functions of a "minister" in that religion.

Setting aside momentarily the possible implications of *Lawrence*, the thrust of *Salkov* is clear. The cantor in *Salkov* qualified for the rental exclusion because, on the basis of the facts there presented, he was a "duly ordained, commissioned, or licensed minister of a church or a member of a religious order" who performed certain ministerial functions.[3] As the Court pointed out in that opinion:

there is in the regulations no test, or even a suggestion of it, that the ordination, commissioning, or licensing must come from some higher ecclesiastical authority. In a religious discipline having the lay democratic character of Judaism and lacking any central ecclesiastical organizations, this ministerial authority can be conferred by the church or congregation itself. * * * [46 T.C. 190 at 196.]

The import of this comment is that religions are not similar in their ministerial authority. In the Jewish religion there are dual pulpits, a bipartite ministry. The cantor is "commissioned" by receiving a "call" from the congregation which desires his services. In the Jewish religion, a cantor is not "commissioned" by a formal ecclesiastical body.

In light of *Salkov* alone, therefore, petitioner Silverman is clearly entitled to the section 107 exclusion. The proof shows that petitioner performed in an official capacity conferred on him by the Beth El Synagogue which had "called" him to that congregation. Cantor Silverman performed the ministerial duties required of him in his official position as cantor: he conducted religious worship; he administered sacerdotal functions; he performed marriages and officiated at funerals and services at houses of mourning; and he directed organizations within the congregation.

Does our opinion in *Lawrence*, then, in any manner cast doubt upon Cantor Silverman's eligibility for the rental allowance exclusion? We do not think so. There are two essential differences. First, the record in *Lawrence* was such that sufficient evidence was not present to establish that Lawrence was a "minister of the gospel." Secondly, *Lawrence* dealt with a religion whose line of ecclesiastical authority is much different from that in the Jewish faith.

Since the case before us involves the Jewish faith, we must be mindful of the mores and customs of that one religion as proven in the record. We cannot be so presumptuous to say that the Jewish religion functions in a manner similar to the Baptist religion. In light of the operation and ecclesiastical authority extant in the Baptist religion as shown in the record of the *Lawrence* case, it is clear that the *Lawrence*

---

[3] Cf. sec. 1.1402(c)–5 (a) and (b), Income Tax Regs.

decision does not impinge on the result in *Salkov* and the outcome of the case before us.

Respondent's emphasis on formal "ordination" as a touchstone for determining section 107 eligibility has no impact in the circumstance presently before us. There is no formal "ordaining" body in the Jewish faith which commissions its cantors. Hence, for respondent to urge this requirement is to severely and unwisely undermine the reasonably expansive and pragmatic meaning which *Salkov* gave to the phrase, "minister of the gospel."

Since formal ordination is not a requirement in the Jewish faith for the commissioning of cantors, and since petitioner, who was commissioned by the Cantors Assembly and who was "called" to his congregation, performed ministerial duties, he is entitled to the exclusion provided by section 107. We are mindful of the fact that in the Jewish faith, with its bipartite ministry, there are certain ecclesiastical duties which only the rabbi performs. For example, the rabbi has the duty of interpreting all questions involving Jewish law. However, because the cantor does not perform all of the duties entrusted to the rabbi does not imply that he is not a "minister of the gospel" for section 107 purposes. We do not agree with respondent in his assertion that the cantor must perform *all* ecclesiastical duties in order to obtain the exclusion.

On the record, petitioner Silverman has satisfied the requirements of section 107 as interpreted by the regulations, and following *Salkov*, his treatment of the rental allowance afforded him by Beth El Synagogue was proper.

*Decision will be entered for the petitioners.*