JOHN G. AND ROSE ANNE KNIGHT, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 45505-86, 27182-87.     Filed January 30, 1989.

*Wilson L. Waller,* for the petitioners.
*Rebecca A. Dance,* for the respondent.

WILLIAMS, *Judge:* In these consolidated cases, the Commissioner determined deficiencies in petitioners' 1984 and 1985 self-employment tax in the amounts of $798 and $1,112.85, respectively. The issue we must decide is whether petitioner John G. Knight (petitioner) performed services as

a "duly ordained, commissioned, or licensed minister" of a church so as to subject him to self-employment tax pursuant to section 1401.[1]

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners were husband and wife during the years in issue and resided in Jackson, Tennessee, when their petition was filed.

On May 18, 1980, petitioner was presented as a candidate for ministry in the Cumberland Presbyterian Church (CPC).[2] The CPC, organized in 1810, is an established religious body in the United States. Petitioner became a "licentiate" of the CPC on May 16, 1981. Becoming a licentiate of the CPC is a solemn occasion and a serious and necessary step toward ordination. Pursuant to the church constitution, when a candidate is licensed, the person presiding over the licensing addresses the candidate as follows:

> In the name of the Lord Jesus Christ, the great head of the church, and by the authority which he has given to the church for its edification, the presbytery now licenses you to preach the gospel and perform other functions of ministry as set forth in the Constitution. To this end may the blessing of God rest upon you and the Spirit of Christ fill your heart. Amen.

On February 19, 1984, Shiloh Cumberland Presbyterian Church (Shiloh) contracted for petitioner's services as a "licentiate minister of the Gospel" in the CPC, in exchange for $15,600 per year, a parsonage, and payment of petitioner's heat bill. Petitioner served Shiloh during 1984 and

---

[1] All section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, unless otherwise indicated.

[2] The constitution of the Cumberland Presbyterian Church states:

6.12. To be received as a candidate for the ministry, a person must be a member in good standing of a particular church in the receiving presbytery. Persons desiring to become candidates for the ministry shall confer with the committee on the ministry prior to presenting themselves to presbytery.

6.13. Those who seek to be licensed and ordained to the ministry shall undergo a period of training and preparation in order that the office may be committed only to qualified persons. In order to form a correct judgement of the qualifications of those seeking admission to the office of the ministry, presbyteries shall receive and, following satisfactory preparation, license candidates who shall then be designated "licentiates." Such persons shall be required to give further satisfactory evidence of their qualifications for the ministry before receiving ordination.

1985. Petitioner briefly served two other small churches in 1984, before being called to Shiloh.

At Shiloh during 1984 and 1985, petitioner preached, conducted the worship service, visited the sick, performed funerals, and ministered to the needy. Under the CPC constitution, because petitioner was not ordained, he could not moderate or vote in the session (the local church's governing body), administer the sacraments (the Lord's Supper and baptism), or solemnize marriages. Moreover, petitioner could not be a member of the presbytery or the synod, and could not be a commissioner to the General Assembly.

Petitioner reported his income for the 1984 and 1985 taxable years from Shiloh and the other churches in which he ministered in 1984 on Schedule C, Profit or (Loss) From Business or Profession. Petitioner did not timely file a Form 4361, Application for Exemption from Self-Employment Tax for Use by Ministers, Members of Religious Orders and Christian Science Practitioners, pursuant to section 1402(e). Shiloh did not issue a W-2 Form to petitioner for the taxable years 1984 and 1985 and did not withhold taxes with respect to the services provided by petitioner. Respondent determined that as a duly ordained, commissioned, or licensed minister performing services in the exercise of his ministry, petitioner was liable for self-employment tax for his 1984 and 1985 tax years.

OPINION

Section 1401 imposes a tax on an individual's self-employment income which is defined as the "net earnings from self-employment" derived by an individual during a taxable year. Sec. 1402(b). Net earnings from self-employment is the gross income derived by an individual from any trade or business carried on by that individual less the deductions attributable to that trade or business. Sec. 1402(a). Pursuant to section 1402(c)(4), a "duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" is engaged in carrying on a trade or business unless the minister is exempt from self-employment tax pursuant to section 1402(e). Unless an exemption certificate is timely filed, the minister is liable

for self-employment tax on income derived from the ministry. Sec. 1402(c)(4). Petitioner has stipulated that he has not filed a timely exemption from self-employment tax. Petitioner will, therefore, be liable for self-employment tax if he performed services for Shiloh as a "duly ordained, commissioned, or licensed minister" of the CPC in the exercise of duties required by the CPC.

Petitioner, relying on the Court-reviewed opinion of *Lawrence v. Commissioner,* 50 T.C. 494 (1968), argues first that because he has not been formally ordained by the CPC, is precluded from administering the CPC's sacraments, and cannot participate in church government, he is not a minister subject to section 1402(c). Petitioner argues that he was an employee of the CPC, and was not subject to self-employment tax. Sec. 1402(c)(2). The status of *Lawrence* is muddied, and subsequent cases have largely confined the authority of the case to a statement that the taxpayer failed to carry his burden of proof. *Silverman v. Commissioner,* 57 T.C. 727, 730 (1972), affd. in an unreported case (8th Cir. 1973, 73-2 USTC par. 9546, 32 AFTR 2d 73-5379); *Wingo v. Commissioner,* 89 T.C. 922, 933 (1987). We believe the principles that have emerged since *Lawrence* in construing the phrase "duly ordained, commissioned, or licensed" compel a decision for respondent in this case.

Congress used the phrase "ordained, commissioned, or licensed" perhaps to allow for differences in methods and terminology among various religious groups in investing their religious leaders with ministerial or priestly authority.[3] Some groups describe this investiture as "ordination," others as "commissioning," and others as "licensing." Applying the statute narrowly could have had the salutary effect of avoiding an inquiry in every case into the nature of a "minister's" duties to decide whether religious offices were equivalent among differing religions. Compare *Silverman v. Commissioner, supra,* and *Wingo v. Commissioner, supra.* These later cases have construed the statutory phrase more broadly. Cf. *Ballinger v. Commissioner,* 728 F.2d 1287 (10th Cir. 1984), affg. 78 T.C. 752 (1982). Under

---

[3]Our examination of the legislative history of sec. 1402(c)(4) reveals no explanation of the statutory phrase "duly, ordained, commissioned, or licensed minister." See S. Rept. 1669, 81st Cong., 2d Sess. (1950). See also *Salkov v. Commissioner,* 46 T.C. 190, 194 (1966), for the lack of explanation of the phrase "minister of the gospel" in the legislative history of sec. 107(2).

existing principles, we must inquire in each case into not only whether the taxpayer is "ordained, commissioned, or licensed" but also whether the taxpayer's duties and functions were appropriate for a "duly ordained, commissioned, or licensed minister."

In determining whether an individual is a "duly ordained, commissioned, or licensed minister" for purposes of section 1402, we have applied the principles pertinent to deciding whether an individual is a "minister of the gospel" for purposes of section 107(2). *Wingo v. Commissioner, supra* at 932. Consequently, case authority construing who is a "minister of the gospel" for purposes of section 107 has equal force in construing who is a "duly ordained, commissioned, or licensed" minister for purposes of section 1402.

In *Salkov v. Commissioner,* 46 T.C. 190 (1966), we decided that a Jewish cantor was a "minister of the gospel" for purposes of section 107(2) and that he could exclude from gross income the rental allowance used to provide his home. Accord *Silverman v. Commissioner, supra* (part-time cantor qualified). In *Salkov* and in *Wingo* we noted that the words "duly ordained, commissioned, or licensed" were disjunctive. In *Salkov* we reasoned that the taxpayer was "commissioned" by the Cantors Assembly of America and installed by his congregation. We so held notwithstanding that a rabbi is the only *ordained* minister in the Jewish religion. *Salkov v. Commissioner, supra* at 197. In *Wingo,* we applied the *Salkov* principles and held that a local pastor who was neither a "full member" of the United Methodist annual conference nor an ordained elder was nonetheless a "duly ordained, commissioned, or licensed minister" because "he assumed and performed all of the duties and functions of a minister." 89 T.C. at 937.

Under the reasoning of *Salkov, Silverman*, and *Wingo,* the phrase "duly ordained, commissioned, or licensed" is applicable to various classes of ministry within a particular religious body. Petitioner, a licentiate of the CPC, is *licensed* to "preach the gospel and perform other functions of ministry" pursuant to the CPC constitution although petitioner can not perform all the functions of an ordained CPC minister.

Petitioner argues that though he was authorized to preach and minister spiritually to the Shiloh congregation, he was specifically prohibited by church law from administering the Lord's Supper, baptism, and marriage, and from moderating the church session and participating in church government. This circumstance was fatal to the taxpayer's entitlement to the benefit of section 107 in *Lawrence v. Commissioner, supra.* Under current case law, however, absence of ordination or incapacity to perform all sacerdotal functions is only one element in analyzing a taxpayer's ministerial status for purposes of sections 107 and 1402. Under *Wingo v. Commissioner, supra* at 934, five factors are analyzed. Those factors are whether the individual (1) administers sacraments, (2) conducts worship services, (3) performs services in the "control, conduct, and maintenance of a religious organization," (4) is "ordained, commissioned, or licensed," and (5) is considered to be a spiritual leader by his religious body. These factors are drawn from section 1.1402(c)-5(b)(2), Income Tax Regs., and prior case law. Section 1.1402(c)-5(b)(2), Income Tax Regs., provides that services performed by a minister in the exercise of his ministry include: (1) The ministration of sacerdotal functions, (2) the conduct of religious worship, and (3) the control, conduct, and maintenance of religious organizations under the authority of a religious body constituting a church or church denomination.

In this case, two of the five *Wingo* factors used to determine ministerial status are not present. Petitioner contends, therefore, that pursuant to section 1.1402(c)-5(b)(2), Income Tax Regs., he is not in the trade or business of being a minister but rather is an employee of the CPC. Neither *Wingo* nor the regulations state or imply that *all* of the ecclesiastical functions mentioned must be performed by petitioner in order for section 1402(c)(4) to apply to him. To the extent that the *Lawrence* holding implied a stricter test, *Wingo* specifically retreated from that holding as did the opinion in *Silverman v. Commissioner*, 57 T.C. 727, 732 (1972). The statute, of course, requires that he be "ordained, commissioned, or licensed" as a minimum, but otherwise we hold that the five factors set forth in *Wingo* are the elements of a facts and circumstances test. This is not an

arithmetical test but a balancing test. Failure to meet one or more of these factors must be weighed by the court in each case.

Applying the *Wingo* factors to petitioner's duties and functions, we find that (1) petitioner did *not* administer the CPC sacraments, (2) petitioner conducted worship services, (3) petitioner did *not* participate in the "control, conduct, and maintenance of a religious organization," (4) petitioner was "duly licensed," but not ordained, and (5) CPC considered petitioner to be a spiritual leader. Three of the five *Wingo* factors are present.

In weighing the importance of petitioner's ministerial limitations, it appears that petitioner's incapacity to perform the Lord's Supper, baptism, marriage, or to moderate the church session or otherwise participate in church government did not diminish the ministry that petitioner did perform. Petitioner preached, conducted worship, visited the sick, performed funerals, and ministered to the needy in the exercise of his ministry at Shiloh. Petitioner did perform one of the three significant ecclesiastical functions described in section 1.1402(c)-5(b)(2), Income Tax Regs., viz, conduct of religious worship.

Petitioner, as a "licensed" minister, falls within the category of self-employed ministers notwithstanding that the CPC constitution provides for the ordination of a minister with higher authority and greater ministry. We hold that petitioner is a licensed minister within the meaning of "duly ordained, commissioned, or licensed minister." Consequently, we hold that petitioner is liable for self-employment tax pursuant to section 1401.

*Decision will be entered for the respondent.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, SHIELDS, HAMBLEN, COHEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WELLS, RUWE, and COLVIN, *JJ.*, agree with this opinion.