JACK W. REEDER AND BEVERLY J. REEDER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent
Reeder v. Commissioner of IRS
Docket No. 15488-91
United States Tax Court
T.C. Memo 1993-287; 1993 Tax Ct. Memo LEXIS 290; 66 T.C.M. (CCH) 1; July 1, 1993, Filed *290 Jack W. Reeder and Beverly J. Reeder, pro se. For respondent: Fred E. Green. WOLFE
WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION WOLFE, Special Trial Judge: This case was heard pursuant to section 7443A(b)(3) and Rules 180, 181, and 182. [1]
Respondent determined deficiencies in petitioners' Federal income tax for the taxable years 1983 through 1987 as follows: Year
Deficiency
1983
$   989
1984
1,753
1985
2,069
1986
3,194
1987
504
The issue for decision is whether Jack W. Reeder (petitioner) is exempt from self-employment taxes pursuant to section 1402(e) on his ministerial income for 1983 through 1987. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners were residents of Galt, California, when they filed their petition in this case. Petitioner became a licensed minister *291 of the Assemblies of God Fellowship in 1971. During 1973 and 1974, petitioner was the pastor of a congregation in the Assemblies of God Fellowship at Tehachapi, California. He resigned from the church in Tehachapi in February 1976. The petitioner studied at a nondenominational seminary from 1978 through 1982. Following studies at the seminary, he was eligible to be ordained as a minister of the Assemblies of God Fellowship in 1980. Petitioner's income from ministerial activities during the period 1969 through 1987 as reported on his tax returns, in summary, is as follows: Petitioner's
Expenses & Listed
Schedule C
Adjustments
Schedule C
Year
Occupation
Gross Income
Claimed
Net Income
1969
Evangelist
$    830
$    793.89
$      36.11
1970
Evangelist [1]
1,317
2,513   ( 1,196)  1971
Auctioneer
1972
Auctioneer [2]
497
656   (   159)  1973
Pastor [1], [3]
4,190
2,480   1,710   1974
Pastor [1]
5,755
3,262   2,493   1975
Auctioneer [4]
5,830
2,965   2,865   1976
Auctioneer [4]
1,100
647   453   1977
Auctioneer
1978
Auctioneer
1979
Minister [1]
11,440
21,620   (10,180)  1980
Minister [1]
18,180
20,886   (  2,706)  1981
Tax return not in record.
1982
Tax return not in record.
1983
Minister
[5] 21,075
10,767   10,308   1984
Minister
25,725
10,210   15,515   1985
Minister
29,090
11,057   18,033   1986
Minister [2]
31,445
5,803   25,642   1987
Minister [2]
8,754
4,659   4,095   *292 On petitioner's return for 1979, he claimed a deduction for educational expenses he incurred for the study of Greek and Bible Studies at the California Graduate School of Theology in Glendale, California. Petitioner explained on the return that the study was not required to meet minimum employment requirements and that the study would not qualify him for a new trade or business and stated that the reason for additional education was "to maintain and improve skills in current ministerial profession". On December 23, 1980, petitioner filed IRS Form 4361, Application for Exemption from Self-Employment Tax for Use by Ministers, Members of Religious Orders, and Christian Science Practitioners at the IRS Fresno Service Center. In response to the inquiry at item 4 of the application, "Date ordained, licensed, etc.", petitioner stated that he was credentialed in 1969, licensed on September 14, 1971, and ordained on April 30, 1980, by the Assemblies of God (Southern California District). He represented on the Form 4361 that 1973 and 1974 were "the first two years after the date entered in item 4", in which he had "net earnings from self-employment of $ 400 or more, some part of which *293 was from services as a minister, priest, rabbi, etc.; or as a member of a religious order". Petitioner's application for exemption from self-employment tax was disapproved on March 3, 1981. In 1983, petitioner again submitted a Form 4361 but this time he stated that he was ordained in 1980 by the General Counsel of the Assemblies of God. This second application was disapproved on November 9, 1983. Petitioner's Form 4361 was filed with the Internal Revenue Service after the due date of the return for the second taxable year for which he had net earnings from self-employment of $ 400 from ministerial services. OPINION Section 1401 imposes a tax on an individual's self-employment income, which is defined as the "net earnings from self-employment" derived by an individual during a taxable year. Sec. 1402(b). Net earnings from self-employment is the gross income derived by an individual from any trade or business carried on by that individual less the deductions attributable to that trade or business. Sec. 1402(a). Pursuant to section 1402(c)(4) and the last sentence of section 1402(c), a "duly ordained, commissioned, or licensed minister of a church in the exercise of his ministry" *294 is engaged in carrying on a trade or business unless the minister is exempt from self-employment tax pursuant to section 1402(e). For exemption from the self-employment tax, a minister must file an application for exemption within the prescribed time limit. Sec. 1402(e). A duly ordained, commissioned, or licensed minister of the church must file the application before the later of (1) the due date of the return for the second taxable year for which the minister has net earnings of $ 400 or more, any part of which was derived from the performance of services in his ministry; or (2) the due date of the return for his second taxable year ending after 1967. Sec. 1402(e)(2). The time limitations imposed by section 1402(e)(2) are mandatory and taxpayers must strictly comply with them. Wingo v. Commissioner, 89 T.C. 922, 930 (1987); sec. 1.1402(e)-3A, Income Tax Regs. To obtain exemption from the self-employment tax, a minister must be duly ordained, commissioned, or licensed. Sec. 1402(c)(4). Neither section 1402 nor the regulations interpreting that section define the term "duly ordained, commissioned, or licensed minister" but the term has been *295 interpreted judicially in detail in cases involving circumstances analogous to those presented here. Ballinger v. Commissioner, 728 F.2d 1287 (10th Cir. 1984), affg. 78 T.C. 752 (1982); Wingo v. Commissioner, supra.
The Ballinger case concerned a minister who applied for an exemption under section 1402(e) after he was ordained at one church, transferred to another church, and years later was again ordained at the second church. The minister filed the exemption form too late to qualify under the first ordination but timely for the second. The Tenth Circuit concluded that the determination when the minister had been "duly ordained, commissioned, or licensed" did not depend upon the timing or the fact of ordination but instead depended upon when he assumed the duties and functions of a minister. In the Ballinger case, the Court did not consider what constituted the duties and functions of a minister since the parties had stipulated that the taxpayer had assumed those duties and functions. In the Wingo case, concerning a deacon and licensed local pastor of a church, this Court *296 followed the Ballinger case and explicitly considered the duties and functions of a minister. In the Wingo case, this Court pointed out that the regulations promulgated under section 1402 describe three types of services that a minister in the exercise of his ministry performs: (1) the ministration of sacerdotal functions; (2) the conduct of religious worship; and (3) service in the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination. Sec. 1.1402(c)-5(b)(2), Income Tax Regs.[2] With respect to the duties and functions of a minister under section 107, concerning the rental value of a parsonage, see Salkov v. Commissioner, 46 T.C. 190, 195 (1966); see also Silverman v. Commissioner, 32 AFTR2d 73-5379, 73-2 USTC par. 9546 (8th Cir. 1973), affg. 57 T.C. 727 (1972). *297 In accordance with the analysis in the Wingo case, petitioner here satisfied the requirements of the regulations under section 1402 with respect to the services performed by a minister. As to the sacerdotal functions, petitioner's own testimony is that while he was the pastor of the Assemblies of God Fellowship in Tehachapi, California, during 1973 and 1974, he could have performed a marriage or performed funeral services with permission or performed services with respect to the dedication of infants, and he did in fact perform the ministry functions of preaching and teaching, baptism, and communion. There is no requirement that to qualify as a "duly ordained, commissioned, or licensed minister" under section 1402 an individual must be qualified to perform and actually perform every sacrament or rite of the religion. Salkov v. Commissioner, supra.
As to the conduct of religious worship, there is no dispute here that petitioner conducted the religious services of the church at Tehachapi during 1973 and 1974. As to the question of service in the control, conduct, and maintenance of the religious organization, petitioner points out that during *298 1973 and 1974 he was the pastor of a local church which was a dependent church and subject to supervision under the constitution and bylaws of the Southern California District of the Assemblies of God Fellowship. Petitioner argues that only upon ordination was he able to participate in the governance of his church organization at a higher level than the local church. In response to a similar argument, in Wingo v. Commissioner, 89 T.C. 922, 936 (1987), we stated: To perform services in the control, conduct, and maintenance of the church or organizations within the church, the minister need only have some participation in the conduct, control, and maintenance of the local church or the denomination.
Plainly, as pastor of the local church at Tehachapi, petitioner had significant participation in the local church. Petitioner further argues that he should not be considered a minister during 1973-1974 because he honestly considered the Tehachapi experience "a training experience, a training ground and a time of learning." He contends that he truly became a minister only upon his ordination in 1980. Nevertheless, the phrase "duly ordained, commissioned, *299 or licensed minister" is a disjunctive phrase and a person may be either ordained, or commissioned, or licensed to be a minister but need not be all three. Wingo v. Commissioner, supra at 933; Salkov v. Commissioner, supra at 197. Petitioner has represented that he was a licensed minister in 1973 and 1974. Moreover, even as late as 1980 when he prepared his 1979 income tax return, petitioner represented that his graduate study at the California Graduate School of Theology would not qualify him for a new trade or business but would enable him to "maintain and improve skills in current ministerial profession". Accordingly, we hold that petitioner was a licensed minister from 1971 through the years before the Court and that he had earnings in excess of $ 400 from self-employment as a minister during the years 1973 and 1974 and perhaps earlier. Therefore, petitioner's Forms 4361 filed in 1980 and 1983 both were untimely. Petitioner did not file Form 4361 within the period ending on the due date of the return for the second taxable year for which he had net earnings of $ 400 or more, any part of which was derived *300 from the performance of services in his ministry. Petitioner does not qualify for the self-employment tax exemption under section 1402(c)(4) and is liable for the self-employment taxes due for the years 1983 through 1987. Decision will be entered for respondent. Footnotes
1. All section references are to the Internal Revenue Code for the tax years at issue, unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
1. Petitioner also listed his occupation as auto sales or auctioneer during these years and reported income from such occupations either as salary or on a Schedule C.↩
2. Schedule C filed for income as evangelist, but occupation listed as "Auctioneer" on page one of tax return.↩
3. Activity listed as "Minister on Schedule C.↩
4. Revenue reported from service to Christian Life Assembly Church and activity listed as minister Schedule SE or on attachemnt, but no Schedule C filed with respect to ministerial income.↩
5. Reported on Form W-2↩
2. Sec. 1.1402(c)-5(b)(2), Income Tax Regs., provides that: (b) Service by a minister in the exercise of his ministry. * * * * * * (2) Except as provided in paragraph (c)(3) of this section, service performed by a minister in the exercise of his ministry includes the ministration of sacerdotal functions and the conduct of religious worship, and the control, conduct, and maintenance of religious organizations (including the religious boards, societies, and other integral agencies of such organizations), under the authority of a religious body constituting a church or church denomination. The following rules are applicable in determining whether services performed by a minister are performed in the exercise of his ministry: (i) Whether service performed by a minister constitutes the conduct of religious worship or the ministration of sacerdotal functions depends on the tenets and practices of the particular religious body constituting his church or church denomination. (ii) Service performed by a minister in the control, conduct, and maintenance of a religious organization relates to directing, managing, or promoting the activities of such organization. Any religious organization is deemed to be under the authority of a religious body constituting a church or church denomination if it is organized and dedicated to carrying out the tenets and principles of a faith in accordance with either the requirements or sanctions governing the creation of institutions of the faith. The term "religious organization" has the same meaning and application as is given to the term for income tax purposes.↩