T.C. Memo. 1997-40


UNITED STATES TAX COURT


OSCAR HAIMOWITZ, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 11985-95.                    Filed January 23, 1997.


Oscar Haimowitz, pro se.


<u>Michele F. Leichtman</u>, for respondent.


MEMORANDUM OPINION


NAMEROFF, <u>Special Trial Judge</u>:  This case was heard pursuant
to the provisions of section 7443A(b)(3)[1] and Rules 180, 181, and
182.  Respondent determined a deficiency in petitioner's 1992
Federal income tax in the amount of $780.

---

[1]  Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the year at issue.  All
Rule references are to the Tax Court Rules of Practice and
Procedure.

After concessions by petitioner[2], the sole issue for decision[3] is whether petitioner may exclude $3,705 from gross income as a parsonage allowance pursuant to section 107(2).

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. At the time he filed his petition, petitioner resided in Beverly Hills, California.

Beginning in November 1950, petitioner worked for Temple Adath Israel (the temple) in Marion, Pennsylvania. He stayed with the temple for about 30 years until he retired in 1980. Petitioner graduated from La Salle College with a degree in social studies. Petitioner, however, never attended a religious seminary[4], and he neither is nor was an ordained rabbi or a

---

[2] Petitioner concedes a $1,270 interest income adjustment and a $226 Social Security income adjustment for the 1992 tax year.

[3] Petitioner also contests the constitutionality of sec. 107, claiming it is in violation of the Establishment Clause of the First Amendment to the U.S. Constitution. This contention is unavailing, in that if we decide the constitutional argument in petitioner's favor, the result would lead to the disallowance of the parsonage exclusion that he seeks. We refuse to consider this issue, as the outcome could not affect petitioner's tax liability in this case. See Kirk v. Commissioner, 51 T.C. 66, 72 (1968), affd. 425 F.2d 492 (D.C. Cir. 1970).

[4] Petitioner testified that he intended to join the Jewish Theological Seminary of America in New York sometime around the year 1950, but was unable to find housing in the New York area. Unable to join the seminary, he began working for the temple.

commissioned cantor.  Petitioner testified, however, that he was recognized as a Fellow in Synagogue Administration.  An organization called Synagogue Administrators Association presented petitioner this honor sometime around 1987 for his efforts while with the temple.

Petitioner's responsibilities with the temple varied over time.  He initially was hired as an executive director, performing mostly administrative functions such as hiring and recruitment tasks.  Petitioner testified, however, that he eventually performed more religious duties for the temple as a "religious functionary".  The temple had a rabbi and a cantor working for it, both of whom performed the temple's religious functions.  Petitioner stated that he never fulfilled the role of either.

Over the course of his 30 years with the temple, petitioner assisted about 500 students with their Bar and Bat Mitzvah preparation.  The substantive training was conducted by the cantor and rabbi.  The cantor would teach the students how to chant their Torah portions, and the rabbi would rehearse with them on the pulpit.  Petitioner, however, would then "step-in" a week or two before the Bar or Bat Mitzvah ceremony and assume responsibility for enhancing the student's performance.  This included such duties as helping students with memorization of blessings, Torah readings, and elocution.

Petitioner additionally performed as the temple's marriage ceremony director. Petitioner would meet with engaged couples to discuss wedding preparations. Petitioner's advice was mostly organizational in nature and related to the specific details of planning a wedding. Petitioner frequently participated in the wedding ceremony as a witness to the contract, but he never officiated.

Petitioner also assisted the rabbi with various tasks during the religious services. This included the duty of assigning certain honors and responsibilities to congregants who performed these tasks during services. Petitioner also performed the following other activities for the temple: He managed cemetery lots that the temple made available to its congregants; he visited and conducted services for mourners; and he provided weekly speakers for senior citizens.

In 1970, petitioner began paying into an "annuity program" provided by the temple. Petitioner provided little detail surrounding the plan or his employment relationship with the temple, other than stating that he contributed 4 percent of his yearly salary and the temple contributed 7 percent. The pension income at issue was derived from this plan.

In 1992, petitioner received $3,705 in pension income, but excluded that amount from gross income. In the notice of

deficiency, respondent included this amount in petitioner's gross income for the 1992 tax year.

Petitioner included with his 1992 tax return a signed statement stating that he was a retired clergyman and that the entire pension income had been expended for the housing allowance.[5] Petitioner testified, however, that for other tax years he included with his tax return the above signed statement, but crossed out the prewritten word "clergyman" and wrote in the words "religious functionary" in its place.

## Discussion

Petitioner bears the burden of proving that respondent's determination is incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 107(2) provides that a "minister of the gospel" may exclude from gross income "the rental allowance paid to him as part of his compensation, to the extent used by him to rent or provide a home." In order for a minister to exclude a parsonage allowance, three criteria must be met: (1) The minister must provide services which are ordinarily the duties of a "minister of the gospel"; (2) the excluded amounts must actually be used to rent or otherwise provide a home; (3) and the rental allowance must be properly designated. See sec. 1.107-1(a), (b), and (c), Income Tax Regs.

_____

[5] Petitioner used a form-letter he received from the Synagogue Administrators Association with the heading "Letter (B) When All Of The Pension Has Been Used As A Parish Allowance".

Respondent contends that the pension income should not be excluded from petitioner's 1992 gross income for the reason that, at the time petitioner contributed to the pension plan, he was not a "minister of the gospel" for section 107 purposes. Respondent also contends that the pension income was not properly designated by the temple as a parsonage allowance, as required. Respondent, however, does not question whether the funds were actually used for housing or whether the provisions of section 107 have applicability to pension income. See Rev. Rul. 75-22, 1975-1 C.B. 49; Rev. Rul. 63-156, 1963-2 C.B. 79.

Petitioner does not claim that he was a rabbi or cantor. Rather, petitioner suggests that he qualified as a "minister of the gospel" because he performed duties as a "religious functionary" for the temple.

Minister of the Gospel

The Internal Revenue Code does not define the phrase "minister of the gospel", and the statute's legislative history contains no clear meaning of the term. The regulations define only what a minister does, but not what a minister is.

Section 1.107-1(a), Income Tax Regs., states that in order to qualify for the exclusion, the home or rental allowance must provide remuneration for services which are ordinarily the duties

of a "minister of the gospel".[6]  The regulations under section
107 specify that the rules in section 1.1402(c)-5, Income Tax
Regs., apply in making this determination.  Section 1.1402(c)-
5(b)(2), Income Tax Regs., lists services which are considered
those of a minister:  (1) The performance of sacerdotal
functions; (2) the conduct of religious worship; and (3) the
performance of services in control, conduct, and maintenance of
religious organizations.  We also consider important whether the
taxpayer was duly ordained, commissioned, or licensed, and
whether the particular church or denomination recognized that
person as a minister or religious leader.  Knight v.
Commissioner, 92 T.C. 199, 204-205 (1989); Wingo v. Commissioner,
89 T.C. 922, 934-937 (1987).

We now consider whether petitioner's responsibilities as a
"religious functionary" fell within the three types of services
of a minister set out in the regulations.  Petitioner's duties
are detailed in our findings of fact.  As the temple's employee,
most of petitioner's responsibilities related to some aspect of
the Jewish religion.  We note, however, these duties were more

---

[6] While "minister of the gospel" refers to clergy of the
Christian faith, Congress did not intend to exclude those persons
who are equivalent of ministers in other religions.  Salkov v.
Commissioner, 46 T.C. 190, 194 (1966).  Rabbis and cantors of the
Jewish faith are considered ministers who can also qualify for
the parsonage exclusion.  See Silverman v. Commissioner, 57 T.C.
727 (1972), affd. in an unreported case 32 AFTR2d 73-5379, 73-2
USTC par. 9546 (8th Cir. 1973); Salkov v. Commissioner, supra at
196-197.

organizational than religious in nature and did not require performance from one who held ministerial authority.

Equally revealing, however, were the religious rites and ceremonies petitioner did not perform. Petitioner admitted that he never fulfilled the role of either rabbi or cantor. The record displays his lack of such responsibility. Petitioner assumed responsibility over the Bar and Bat Mitzvah students only in the last week or two of their training and only to enhance the efforts of the rabbi and cantor. The rabbi and cantor, however, held the main parochial responsibilities for the students' training.

Further, petitioner acted as the marriage ceremony director and participated in wedding ceremonies as a witness. His responsibilities as director, however, were mostly secular in nature. While petitioner participated in wedding ceremonies, he never officiated. Further, petitioner assisted the rabbi with various functions during religious services. It was the rabbi, however, not petitioner, who actually led those services for which petitioner assisted. Finally, although petitioner visited and conducted services for mourners, he, presumably, did not officiate at the funerals.

As illustrated above, with the sole exception of conducting services for mourners, petitioner did not regularly perform those duties that ministers of the Jewish faith customarily perform.

See Silverman v. Commissioner, 57 T.C. 727, 731 (1972), affd. in an unreported case 32 AFTR2d 73-5379, 73-2 USTC par. 9546 (8th Cir. 1973) (a cantor's performance of the following duties were considered ministerial:  Conducting religious worship, administering sacerdotal functions, performing marriages, officiating at funerals, leading services at houses of mourning, and directing organizations within the congregation); Salkov v. Commissioner, 46 T.C. 190, 195-196 (1966).

We next consider whether petitioner was ordained, commissioned, or licensed in his capacity as "religious functionary".  The record demonstrates that he was not. Petitioner admitted at trial that he was not an ordained rabbi or a commissioned cantor.  The fact that petitioner was recognized as a Fellow in Synagogue Administration is irrelevant to the above determination.  First, petitioner did not hold this title while he performed his duties with the temple.  Rather, he received this honor sometime around 1987, about 7 years after he left the temple.  Second, even if petitioner had received this honor while performing services for the temple, this title would not have established that petitioner was ordained, commissioned, or licensed as a recognized religious official of the Jewish religion.  Rather, as the words Fellow in Synagogue Administration suggest, the designation reflects that petitioner

merely performed duties as an administrator, a primarily secular function.

Finally, we consider whether the temple considered petitioner its religious leader. We cannot find that it did, as petitioner failed to present testimony or admissible evidence establishing that the temple or anyone else viewed him that way.

Accordingly, we find that petitioner failed to demonstrate that he was a "minister of the gospel" as specified in the regulations and case law. As a judicial body we are loath to evaluate ecclesiastical authority in the various religious disciplines. We emphasis that our opinion is based on the record before us, and our finding should not diminish the importance of petitioner's contributions to his community.

Designation of Rental Allowance

To qualify for the parsonage exclusion, the amount paid to a minister, to rent or otherwise provide a home, must be designated as rental allowance pursuant to official action taken in advance of such payment. Sec. 1.107-1(b), Income Tax Regs. The above regulation states that a designation may be evidenced in an employment contract, in minutes of or in a resolution by a qualified organization, or in any appropriate instrument evidencing such official action. Without official designation, no exclusion is allowable under section 107. See Eden v.

<u>Commissioner</u>, 41 T.C. 605, 607 (1964); <u>Mosley v. Commissioner</u>, T.C. Memo. 1994-457.

Petitioner failed to demonstrate that the temple properly designated the pension income as a parsonage allowance. Completely missing from the record were details of the employment arrangement in which he and the temple were engaged. In fact, petitioner presented no evidence which even tangentially relates to the notion of official designation.

Accordingly, we find that petitioner is not entitled to exclude the pension income from his 1992 gross income under the parsonage exclusion found in section 107(2).

To reflect the foregoing,

<u>Decision will be entered</u>
<u>for respondent</u>.